HUME v. LAUREL HILL CEMETERY et al.

(Circuit Court, N. D. California. October 9, 1905.)

No. 13,457.

1. DESCENT AND DISTRIBUTION—TITLE OF HEIR—ACTION RELATING TO REAL PROPERTY.

Under the law of California a sole heir is vested at once on the death of the ancestor with title to real estate which will support an action against a third party with respect thereto, regardless of whether there has been a settlement of the estate and a decree of distribution.

2. CONSTITUTIONAL LAW—EXERCISE OF POLICE POWER—JUDICIAL POWER TO REVIEW.

The question whether an ordinance is a fair, reasonable, and appropriate exercise of the police power, or is an unreasonable, arbitrary interference with the right to hold and enjoy property under the guise of an exercise of police power, is a judicial one, and the courts are not precluded from determining it by the mere fact that a municipal body has expressed its judgment.

3. MUNICIPAL CORPORATIONS—POLICE POWER—REASONABLENESS OF REGULATION.
     An ordinance which arbitrarily prohibits the burial of bodies within an
     entire county, embracing large tracts of land unoccupied and remote from
     human habitation, where the public health and safety could not possibly
     be endangered, is unreasonable and void.
4. SAME—PROHIBITING USE OF CEMETERY.
     If a cemetery has never been and will not become a nuisance, and is
     not dangerous to life nor detrimental to the public health, it is not with-
     in the constitutional powers of a municipality to prohibit its use.

In Equity. On demurrer to bill and amendments.

Lloyd & Wood and Haven & Haven, for complainant.

Percy V. Long, City Atty., and John S. Partridge, Asst. City Atty,
for defendants.

HUNT, District Judge. Complainant brings this action to obtain
a writ of injunction against the defendants, enjoining them, during the
pendency of the suit and until further order of the court, from en-
forcing and attempting to carry into effect the provisions of an ordi-
nance, numbered 25, passed by the city council of the city of San Fran-
cisco, prohibiting the burial of the dead within the city and county of
San Francisco, and from in anywise preventing or interfering with the
complainant in the burial of the dead body of Sarah R. Macbeth in a
certain burial plot alleged to belong to complainant, and from prevent-
ing or attempting to prevent complainant or other lot owners from bury-
ing or interring, or causing to be buried or interred, the dead body of
any person in the Laurel Hill Cemetery at San Francisco. The com-
plainant is a citizen of California. The Laurel Hill Cemetery is an as-
sociation. The city and county of San Francisco is a municipal cor-
poration. She also makes defendants the board of supervisors of the
city and county of San Francisco, the board of health of the city and
county of San Francisco, certain persons who are members of and
constitute the board of supervisors of the city and county of San Fran-
cisco, certain persons who are members of and constitute the board of
health of the city and county of San Francisco, and the health officer
of said city and county.

Her bill alleges that there was passed and duly approved on April 18,
1859, an act of the Legislative Assembly of the state of California en-
titled "An act authorizing the incorporation of rural cemetery asso-
ciations" (St. 1859, p. 281, c. 267), under which it was provided that
any number of persons residing in said state, not less than seven, who
should desire to form an association for the purpose of procuring and
holding lands to be used exclusively for a cemetery or place for the
burial of the dead, might meet and proceed to form an association;
and it was further provided that a certificate, stating the names of the
associates, the number of trustees, and the time of their election,
should be made and acknowledged, and filed and recorded in the of-
fice of the county clerk of the county in which the cemetery grounds
were situated; and that, upon complying with these provisions, the as-
sociation mentioned should be a body politic and incorporate, in fact
and in name, and have certain corporate powers, for instance: to sue

and be sued, to purchase, hold, sell, and convey such real and personal estate as the purposes of the incorporation should require, to make by-laws, not inconsistent with the laws of the state, for the organization of the company, the management of the property, the regulation of its affairs, and for carrying on all kinds of business within the object and purposes of the company. The bill alleges that the aforesaid act is now in full force and effect; that after its passage, on April 11, 1867, Nicholas Luning and others met and duly elected officers and proceeded to form an association, which was named the "Laurel Hill Cemetery," and did elect trustees, and did make the necessary certificate, and did cause the same to be filed and recorded in the office of. the county clerk of the city and county of San Francisco, in which the cemetery grounds of said association were situated; and that since the recording of the certificate the defendant Laurel Hill Cemetery became, and was, and ever since has been, a legally incorporated body. It is alleged that the city and county of San Francisco is a municipal corporation organized and existing under and by virtue of the Constitution and laws of the state of California; that since January 2, 1900, the said city and county of San Francisco has been subject to a charter framed for its government, and adopted in pursuance of the provisions of the Constitution of the state of California; and the defendant board of supervisors of the city and county of San Francisco are, by said charter, vested with the legislative power of said city and county; and the defendants the board of health of the city and county of San Francisco and the health officer of said city and county are vested with the regulation and control of the health of the inhabitants of the said city and county; and that the defendant Schmitz is mayor of the said city and county.

Complainant further shows that, during the year 1853, Nathaniel Gray and his associates were co-owners of a tract of land outside of the corporate limits of the city of San Francisco, and that, in November of 1853, the said Gray and his associate co-owners concluded to devote the said tract of land, which is now occupied as a cemetery by the defendant Laurel Hill Cemetery, to the purposes of a rural cemetery, and thereupon they began to prepare the land for the purposes aforesaid, and did clear the same and grade it and construct roads and avenues, and do all work necessary to fit the said lands for the uses to which it was designed to devote the same, and did continue to prosecute the work until May 30, 1854, upon which day the lands referred to were publicly dedicated to the purposes aforesaid under the name of "Lone Mountain Cemetery"; that the dedication was of public importance; that a large number of persons were present at the dedication, that the proceedings connected with the dedication ceremonies were published, and that it was generally known that the lands had been set apart and dedicated by the said Gray and his associates for the exclusive purposes of a place for the burial of the dead; that, at the time of the establishment of the said Lone Mountain Cemetery, the same was outside of the corporate limits of the city of San Francisco, and remote from the business part of the said city, distant at least two miles therefrom, and was more than one mile away from any part

of the city used for dwellings; that no streets leading from the business or dwelling part of the city to the cemetery had been opened or paved; and that the only way to the cemetery for vehicles was along the street or road leading to the military reservation of the Government of the United States, situated on the shores of the Bay of San Francisco, thence by a road leading from the highway aforesaid to the cemetery, a distance of four miles from the city, which road was kept in repair by the associates aforesaid for the purpose of obtaining access to the said Lone Mountain Cemetery, at which it stopped; that during the occupation and use of the said tract of land for the purpose of the said Lone Mountain Cemetery, very large sums of money were expended in improving the cemetery, constructing walls, monuments and other improvements, in planting, watering, and otherwise caring for grasses, flowers, and shrubbery therein, and the lands were always used exclusively for cemetery purposes; that Gray and his associates continued to improve the property, and expended thereon, over and above the receipts, upwards of $160,000, and, between the time of the establishment of the cemetery and its conveyance to the Laurel Hill Cemetery, they sold to divers persons more than 3,000 lots and plots, many of which have been improved at great expense, and it was notoriously known to the city of San Francisco that such work was being done, and such expenditures were being made in the said cemetery, and for the purposes aforesaid.

Complainant further alleges that on the 26th day of May, 1868, and after the formation and organization of the defendant Laurel Hill Cemetery, Gray and his associates conveyed to the defendant Laurel Hill Cemetery all that part which had been actually appropriated to the purposes of a cemetery; that the grant and conveyance was made upon the condition that the grantee should lay out and divide the same into cemetery lots, and sell the same for cemetery purposes, and carry on the usual business of a rural cemetery; that defendant took possession, and ever since has continued to carry on and conduct the business of a cemetery; that the last above described tract constituted and comprised that portion of the original tract which had been set apart and used for cemetery purposes, and, upon the grant and conveyance aforesaid, all that part of the said original tract which was not included in said conveyance was appropriated to and used for other purposes, and was no longer devoted to the purposes of a cemetery; that afterwards, on the 17th day of May, 1871, the defendant Laurel Hill Cemetery applied to the board of supervisors of the city and county of San Francisco for a grant of the tracts last above described, pursuant to the provisions of an act of the Legislature of the state of California, entitled "An act to expedite the settlement of land titles in the city and county of San Francisco, and to ratify and confirm the acts and proceedings of certain of the authorities thereof" (St. 1869–70, p. 353, c. 249); that thereafter, on June 23, 1871, after proceedings had been regularly had, the then mayor of the city and county of San Francisco granted to the said defendant the tract of land last above described for a consideration of $24,139.79, which was paid to the treasurer of said city and county; that thereafter, on December 29, 1890, said defendant Laurel Hill Cemetery sold from the western side

of said tract of land a portion thereof not required for and not in use for burial purposes, and thereby reduced the size of the cemetery to an area particularly described in the petition, and that defendant has since held, and now holds, the tract specifically described, and uses the same exclusively for cemetery purposes.

Complainant alleges that, at the time of the entry of the defendant Laurel Hill Cemetery into the possession of said lands, its predecessors had sold therein a large number of lots, and that under the provisions of the act of the Legislature of the state of California first above mentioned, and under which said defendant was incorporated, it was and is provided that in case the ground purchased for cemetery purposes, in accordance with the provisions of said act, shall have been used as a cemetery previous to such purchase, then those who are lot owners at the time of the purchase shall have all the privileges they would be entitled to by purchase from a corporation formed, as in said act provided; that, by the provisions of the said act, it was provided that, whenever any lands procured and held, as in said act provided, to be used exclusively for cemetery purposes by a corporation organized under the provisions of said act, shall be laid off into lots, and such lots, or any of them, shall be transferred to individual holders, and after there shall have been an interment in a lot or plat so transferred, such lot or plat from the time of such interment shall be forever thereafter inalienable, and shall, upon the death of the holder or proprietor, descend to his heirs at law forever; that thereby, and by the enactments and provisions aforesaid, complainant alleges that the state of California contracted with the lot owners for the perpetual use of such lots and plats for the purposes in the said act prescribed, and such owners and their heirs at law became, and were, and now are, vested with lawful and inalienable right to such use; that since the establishment of the said cemetery, and its dedication in the year 1854, the defendant Laurel Hill Cemetery and its predecessors in interest have sold and conveyed 40,000 lots; that a large proportion thereof have been used for interments, but that a large proportion of said lots are still capable of receiving a number of interments in addition to those already made therein; that the owners and proprietors of said lots have, since the establishment of the cemetery, and the purchase by them of said lots, acted and relied upon the contract aforesaid, and in reliance upon the faith and credit thereof, and fully believing that they would be protected in the uses of their said lots, as in said act guarantied, have expended large sums of money upon the same, and have erected great numbers of monuments to perpetuate the memory of the members of the family who may have been interred in the said lots; that said lots have been made beautiful by the employment of the highest skill in landscape culture, and that upon the improvement and embellishment of said lots, upon information and belief, complainant alleges more than $2,000,000 have been expended; that the improvements are of a lasting character, and that the holders and proprietors of the lots were further induced to make expenditures, because of the fact that, under the provisions of the statute aforesaid, the defendant Laurel Hill Cemetery, upon payment of its indebtedness caus-

ed by its purchase of the lands in said cemetery, is required to apply all the proceeds arising from the sales of lots and graves to the improvement, embellishment, and preservation of the said cemetery, and to incidental expenses, and to no other purpose or object; that about eight miles of paths and ways have been constructed, that a reservoir and system of waterworks have been built, and walls to inclose the said cemetery, and other works, which have cost more than $100,000; that, at the time of the purchase and acquisition by the Laurel Hill Cemetery of the cemetery aforesaid, it created a bonded indebtedness in the sum of $125,-000, and for the payment thereof used and employed 60 per cent. of the proceeds of all sales of lots, plots, or graves in said cemetery, until the final payment of said indebtedness, which was made on December 31, 1890, since which time the whole of all proceeds derived from the sale of lots and graves has been applied to the improvement of the said cemetery, and to incidental expenses, and under the provisions of the first-mentioned act of the Legislature of California, under which the said defendant Laurel Hill Cemetery was incorporated, all of such proceeds must in the future be applied to the purposes aforesaid; that the said defendant has yet unsold about seven acres of land within the said cemetery, and that the same has been divided, or may be divided, into lots and graves sufficient for the burial of about 9,000 bodies, and that the whole of said unsold area is now ready, and has been prepared, for sale to persons desiring to acquire the same for burial purposes; that the estimated value of the ground unsold is $75,000, and it is alleged that, if said defendant Laurel Hill Cemetery were allowed to continue the use of said cemetery for the purposes of its establishment, it would be able to sell said ground, so remaining unsold, and to receive the sum of $75,000 therefor, all of which must be applied to the improvement, embellishment, and preservation of said cemetery and to incidental expenses, and for no other purpose or object.

It is alleged that all the official and other maps of the said city and county show the tract of land aforesaid as laid out and described as a cemetery; that no public streets have ever been laid out or opened, or declared as streets, into or through said tract; that the said defendant Laurel Hill Cemetery has paid all taxes and assessments that have been made upon the said tract of ground, including street assessments and charges for the improvement of the streets adjoining said land, and for the construction of sidewalks; that, at all times since the establishment of said cemetery, the said defendant Laurel Hill Cemetery, and its predecessors, and lot owners therein, have observed and performed all and every of the rules, regulations, and requirements establishd by the said city and county, and by the board of health therein, concerning the interment of bodies in such cemetery; and that they have at all times exercised care and diligence so that the same could not be objectionable in any way, or be chargeable with neglect of any precautions to protect the sanitary conditions of the neighborhood in which the said cemetery is situated, and of said city and county.

Complainant avers that at no time since the establishment of the said cemetery has it, or any part thereof, been, nor is it, or any part thereof,

now, or will it be, or any part thereof, injurious to health, indecent, or offensive to the senses, or any obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstruct the free passage or use in the customary manner of any public park, square, street, or highway; that the soil of said cemetery is sand, and the natural condition and character thereof are such that no dangerous or disease-breeding elements can be transmitted through the same from the decaying remains of the bodies buried therein; that, since the establishment of said cemetery, many residences have been built in its neighborhood, and the same have been, and are now, occupied by families, and yet it has not been proven that the district embracing said cemetery and said residences was unhealthy, but, on the contrary, the said district has always been, and now is, regarded as particularly healthy and free from the diseases which prevail in other parts of said city and county; that there have not been, and are not now, any wells excavated in the neighborhood of said cemetery for the purpose of supplying water to any of the residences for families residing therein, or for consumption by human beings.

It is further averred that there are within the corporate limits of the city and county of San Francisco several large tracts of land, some of which consist of barren sand hills, and are entirely unoccupied, and some of which are used solely for farming purposes; that some of said tracts of land contain several hundred acres of land; and that interments of dead bodies could be made on several of said tracts of land and within the corporate limits of the city and county of San Francisco, which would be more than a mile distant from any human habitation or public thoroughfare.

It is then averred that, notwithstanding the premises, the board of supervisors of the city and county of San Francisco, defendants herein, pretending to act under and by virtue of the charter of said city and county, did, on the 26th day of March, 1900, vote and adopt a resolution of which the following is a copy:

"Bill No. 54. Ordinance No. 25. Prohibiting the burial of the dead within the city and county of San Francisco.

"Whereas, the burial of the dead within the city and county of San Francisco is dangerous to life and detrimental to the public health: Therefore, be it

"Ordained, by the people of the city and county of San Francisco as follows:

"Section 1. It shall be unlawful for any person, association or corporation, from and after the first day of August, A. D. 1901, to bury or inter, or cause to be interred or buried, the dead body of any person in any cemetery, graveyard or other place within the city and county of San Francisco, exclusive of those portions thereof which belong to the United States, or are within its exclusive jurisdiction.

"Sec. 2. Any person, association or corporation violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than one hundred ($100) dollars, nor more than five hundred ($500) dollars, or by imprisonment not exceeding six (6) months, or by both such fine and imprisonment.

"Sec. 3. Order No. 1,961, and all orders or parts of orders in conflict with the provisions of this ordinance are hereby repealed.

"In board of supervisors, San Francisco, March 26, 1900.

"After having been published five successive days, according to law, taken up and passed by the following vote:

"Ayes—Supervisors Booth, Boxton, Brandenstein, Comte, Connor, Curtis, D'Ancona, Duboce, Dwyer, Helms, Hotaling, Jennings, Maguire, McCarthy, Reed, Sanderson.

"Excused from voting—Supervisor Tobin.

"Absent—Supervisor Fontana.

"Jno. A. Russell, Clerk.

"Approved: San Francisco, March 30, 1900.

"James D. Phelan,

"Mayor and Ex-Officio President of the Board of Supervisors."

Complainant further alleges that this ordinance was not enforced by defendants as against the Laurel Hill Cemetery until November 13, 1903; that at all times from the establishment of said cemetery in 1854, until November 13, 1903, the burial of dead bodies therein was permitted, but that on and after November 13, 1903, defendants refused to permit or allow the burial of further dead bodies in said cemetery.

It is then set forth that on October 20, 1886, Robert Stuart Macbeth purchased from the said defendant Laurel Hill Cemetery a burial plot; that under such purchase a deed of conveyance was made and delivered to him; that thereafter said purchaser improved the said lot; that the said Macbeth died, and his body was interred in the aforesaid plot on July 5, 1897, and that subsequently the bodies of several of his children were interred in the aforesaid plot; that on February 25, 1903, the body of an adult daughter was interred in the said plot; that on November 13, 1903, Sarah R. Macbeth, who was the surviving widow of said Robert Stuart Macbeth, died, and ever since the death and burial of her husband she had upon many occasions expressed to complainant her strong desire to be buried in the aforesaid plot by the side of the bodies of her deceased husband and children; that upon the death of said Sarah R. Macbeth, and on November 13, 1903, complainant requested the defendant Laurel Hill Cemetery to prepare a grave for the burial of the body of said Sarah R. Macbeth in the aforesaid burial plot, but that the said defendant Laurel Hill Cemetery refused to allow complainant to bury the body of Sarah R. Macbeth in said plot unless a permit for said burial were obtained by said complainant from the office of the defendant the board of health of the city and county of San Francisco; that thereupon complainant applied for such permit, but was refused the same, upon the ground that such burial was contrary to the provisions of the aforesaid ordinance; that ever since November 13, 1903, defendants herein, acting under the alleged authority of the said ordinance, have prohibited the burial of the dead body of any person in the aforesaid cemetery, and in all parts of the said city and county of San Francisco ('other than those parts which belong to the United States); and that the only alleged justification of such prohibition by defendants is the ordinance hereinbefore set forth.

Complainant alleges that she is the daughter and only surviving heir at law of said Robert Stuart Macbeth and said Sarah R. Macbeth, and that she is the owner of the aforesaid burial plot purchased by her father, as aforesaid, and that since defendants have refused to permit the interment of the body of the deceased mother in the said burial plot, she

has been compelled to bury the body of her deceased mother in a cemetery situated in a county other than the city and county of San Francisco; but that she desires to remove the same to the burial plot in said Laurel Hill Cemetery, and that she will do so whenever permitted so to do by defendants.

She alleges that the ordinance set forth is wholly void and without force and effect, in that it is contrary to and in violation and in derogation of the provisions of section 8 of article 1 of the Constitution of the United States in this: That it is a municipal law impairing the obligation of a contract, and in that behalf she alleges that by reason of the organization of the said Laurel Hill Cemetery under the act of 1859, hereinbefore mentioned, and its acceptance of the provisions thereof, and its acquisition of lands, which now constitute the said Laurel Hill Cemetery, and by their use exclusively for cemetery purposes, a contract was made and still exists between the said Laurel Hill Cemetery and complainant, and the other lot owners therein, and the state of California, by which the said Laurel Hill Cemetery is entitled to continue the holding and use of said lands for the purposes aforesaid; and the said complainant and other lot owners are vested with the inalienable right to continue burials and interments in the lots acquired by them from said Laurel Hill Cemetery, or its predecessors; that the said act of the Legislature of the state of California is in full force and effect; and that there never has been any legislative provision which authorized the city and county of San Francisco, or its board of supervisors, to pass any order, or other municipal enactment, preventing burials in the said Laurel Hill Cemetery.

Complainant avers that said ordinance is contrary to and in violation of the fourteenth amendment to the Constitution of the United States, in that it deprives the said Laurel Hill Cemetery of its property without due process of law, and that it deprives said complainant and various other lot owners of their property without due process of law; that, if the said ordinance is continued, the said Laurel Hill Cemetery will be prevented from making any sales of lots now remaining unsold, and that all the owners of lots therein will be wholly prevented from making further interments, and will thereby be deprived of their property, and be prevented from making lawful use thereof; and that, by denying to the complainant the right to bury the body of her deceased mother in her plot, she has been deprived of her property without due process of law. And she further avers that the inalienable right to use her burial plot aforesaid, and her present right to bury the body of her deceased mother therein, of which right she has been deprived by the provisions of the aforesaid ordinance, is of far greater value than the sum of $2,000, and that the value of such right will be increased upon the death of her descendants and other persons whose bodies would be entitled to burial in the plot, but for the provisions of the aforesaid ordinance, and that the matter in dispute in this action exceeds, exclusive of interest and costs, the sum or value of $2,000.

It is also alleged that the said ordinance is in violation of the act of the Legislature of the state of California of April 18, 1859, which authorized the incorporation of rural cemetery associations, and complain-

ant pleads that the said Laurel Hill Cemetery is entitled to continue its use of the lands acquired for cemetery purposes; and that the Legislature of the state has never authorized the municipal corporation, the city and county of San Francisco, to violate the provisions of the said act, or to prevent further burials in any of the cemeteries owned by corporations organized under the provisions of the act referred to.

She alleges that the ordinance is unreasonable, in that it prevents any burial within that part of the city and county of San Francisco which is under the control and jurisdiction of the said municipal corporation; and she alleges that it is the duty of the said municipal corporation to provide suitable places for the burial of the dead within its corporate limits, and that the said municipal corporation is without authority to compel other counties or other municipal corporations to permit and allow the burial of the dead from the said city and county of San Francisco to be had in said other counties or municipal corporations.

She avers that it is unreasonable also, in that it does not permit the prevention or abating of the injurious effects alleged to result from the continued use of said cemetery by the use and adoption of precautions which would obviate all the objections alleged in the preamble of such resolution to the burial of the dead in the aforesaid cemetery; that the ordinance is unreasonable and void because, so far as the defendant Laurel Hill Cemetery is concerned, the facts recited in the preamble of such resolution do not exist, and the cemetery has not, and never has, and never will, become a nuisance within the meaning of the provisions of the Civil Code of the state of California; that it is not true that the burial of the dead within the aforesaid cemetery is dangerous to life and detrimental to the public health, but that, on the contrary, such burial in the cemetery is wholly free, and will continue absolutely free, from any danger to life or detriment to the public health; that the ordinance is unreasonable and void, because the said municipal corporation is estopped by its acts and conduct to claim or assert the right of making it unlawful to continue to bury or inter bodies of dead persons in the aforesaid cemetery; that at all times since 1853, the city and county of San Francisco has had knowledge that the predecessors of said Laurel Hill Cemetery had prosecuted the work of establishing a cemetery which was at the time of its establishment removed for more than two miles from the business part of the city of San Francisco; that the said Laurel Hill Cemetery, in 1868, had acquired the said cemetery ground, and had sold a great part of the lots, and had expended large sums in the preservation of said cemetery, and that many persons had expended large sums of money therein, in the belief that they and their heirs at law would be permitted to continue the interments of the dead within the same; that the city of San Francisco, and the said city and county of San Francisco, have at all times, until the passage of the ordinance aforesaid, encouraged the said Laurel Hill Cemetery and its predecessors in interest, and said lot owners in the work of maintaining and adorning the said cemetery and keeping it for the uses to which it has been devoted; that the city and county of San Francisco has received a large sum of money as the purchase price for the lands embraced within the said

cemetery, and large sums in payment of street assessments and other improvements, with full information that the lands aforesaid had been devoted exclusively to the uses of a cemetery, and yet the city and county of San Francisco retains all of the said sums and does not now offer to return the same; that heretofore, on March 15, 1888, the board of supervisors of the said city and county duly passed and adopted an order (No. 1,961) prohibiting the burial of the dead within certain limits of the city and county of San Francisco, and therein declared that it should be unlawful for any persons or associations, from and after January 1, 1889, to bury the dead body of any person in any cemetery or any place within that portion of the city and county of San Francisco bounded and described in the said order, and which said portion of said city and county did not include, but, on the contrary, excluded, the lands and premises constituting the said Laurel Hill Cemetery.; that said Order 1,961 was adopted by the board of supervisors of the city and county of San Francisco with full knowledge of the said use and existence of the Laurel Hill Cemetery, and the exclusion was made with such full knowledge.

It is also alleged that Ordinance No. 25, aforesaid, is unreasonable and void, because there are within the corporate limits of the city and county of San Francisco several large tracts of land which are either entirely unoccupied or used solely for farming purposes, some of which consist of several hundred acres of land, and upon which interments of dead bodies could be made, which would be more than a mile distant from any human habitation or public thoroughfare.

Complainant then alleges that the city and county of San Francisco, and the board of supervisors, and the board of health, and the mayor, and the health officer, are enforcing Ordinance No. 25, and preventing interments in Laurel Hill Cemetery, and thereby destroying the value thereof; and that all of the acts and doings of the said defendants are contrary to equity and good conscience, and tend to the wrong, injury, and oppression of the complainant.

. The defendants, the city and county of San Francisco, the board of supervisors of the city and county of San Francisco, the board of health of the said city and county, the mayor of the said city and county, and the members of the board of supervisors of the said city and county, and the members of the board of health of the said city and county, and the health officer of the same, respondents to the bill of complaint, demur upon the ground that the complainant's bill does not contain any matter of equity wherein the court can grant her any relief, and that this court has no jurisdiction of the subject-matter attempted to be set forth in complainant's bill, nor of the persons of these respondents, nor of the persons of any of these respondents.

Plaintiff, being the only heir, is entitled to maintain this action. Her title as heir to land vested at the death of the ancestors. It did not originate in a decree of distribution, but came from the ancestor. Bates v. Howard, 105 Cal. 173, 38 Pac. 715; Estate of Newlove, 142 Cal. 377, 75 Pac. 1083. A final decree of distribution in a probate court only serves to release the property of the heir from the conditions to which, as the estate of a deceased person, it was subject. Spotts v. Hanley, 85 Cal. 155, 24 Pac. 738; Abbott's Probate Laws, § 430.

We are not dealing with any dispute between the heir and executor, or administrator; hence, whether the right of possession remains exclusively with the executor or administrator, until it appears that the estate has been settled, is not now material. Here the title of the complainant and her right of possession are so vested as to be good against all persons claiming adversely to her, except the executor or administrator, or persons claiming under him.

Inasmuch as the question presented to the court herein arises upon respondents' demurrer to complainant's bill of complaint, all the material facts alleged in the said bill must be taken as admitted for the purposes of passing upon the sufficiency of the demurrer. Pacific R. R. of Missouri v. Missouri Pac. Ry., 111 U. S. 505, 4 Sup. Ct. 583, 28 L. Ed. 498; Dillon v. Barnard, 21 Wall. 430, 22 L. Ed. 673.

The vital question to be determined is, not whether the exercise of the police power with reference to any particular cemetery has been properly had, but whether the ordinance under investigation is valid. Counsel for respondents contend that the validity of the ordinance must be determined from the face of the ordinance alone, and that the court will look no farther; that the board of supervisors of the city of San Francisco having jurisdiction of the subject-matter, its ordinance is an adjudication thereof, and that the courts have no jurisdiction to inquire into the reasonableness of the acts of the board. I cannot assent to these views.

The right of the legislative branch of the government to exercise what are called police powers in determining, in the first place, what measures are "appropriate or needful" for the protection of the public health, cannot at this day be seriously questioned. That doctrine has been considered too often by the Supreme Court, where the frequent sanction of judicial expression and decision has sustained it as a universal rule of legislative power. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. But there are limitations to the valid exercise of the police power. Lochner v. State of New York (U. S. Sup. Ct.—decided April 17, 1905.) 25 Sup. Ct. 539, 49 L. Ed. 937. And the courts will pass upon the constitutionality of legislative acts and declare them void, if clearly unreasonable, or in conflict with the fundamental law. It is not only the right, but also the duty, of the judiciary to do so.

Long since did this become fixed in our jurisprudence. An inquiry into the question of whether an ordinance is a fair, reasonable, and appropriate exercise of the police power, or is an unreasonable, arbitrary interference with the right to hold and enjoy property, under the guise of an exercise of police power, is a judicial one, and the courts are not precluded from answering it by the mere fact that a board of supervisors or municipal council has expressed its judgment. No higher authority can be cited to support this view than the frequently quoted language of Chief Justice Marshall, in Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60:

"To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limitations may at any time be passed by those intended to be restrained? The distinction between government with

limited and unlimited powers is abolished if those limitations do not confine the person on whom they are imposed, and if acts prohibited and acts allowed are of equal obligation."

Again, the Supreme Court, in Mugler v. Kansas, 123 U. S. 661, 8 Sup. Ct. 297, 31 L. Ed. 205, said:

"The courts are not bound by mere forms, nor are they to be misled by mere pretences. They are at liberty, * * * indeed, are under a solemn duty, * * * to look at the substance of things whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relations to these objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby to give effect to the Constitution." Pollock v. Farmers' L. & T. Co., 157 U. S. 554, 15 Sup. Ct. 673, 39 L. Ed. 759; Reagan v. Farmers' L. & T. Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Covington Turnpike Road v. Sandford, 164 U. S. 578, 17 Sup. Ct. 198, 41 L. Ed. 560; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; Lochner v. State of N. Y. (Case No. 292, Oct. Term U. S. Sup. Ct. 1904) 25 Sup. Ct. 539, 49 L. Ed. 937; Lawton v. Steele, 152 U. S. 133–137, 14 Sup. Ct. 499, 38 L. Ed. 385; Jew Ho v. Williamson (C. C.) 103 Fed. 10.

The ordinance under examination prohibits the burial of dead bodies, not only within those portions of the city of San Francisco which are thickly inhabited, but throughout the limits of the municipality, which embrace the entire county of San Francisco. It does not attempt to regulate in any manner the burial of bodies within that territory (thus recognizing that existing cemetery associations have rights demanding consideration), by requiring such safeguards and precautions in the interment of bodies as would avoid danger to the public health; but it prohibits any burials under any and all circumstances and conditions. It declares that the burial of dead bodies within the city and county of San Francisco is dangerous to life and detrimental to public health. By its mere order, the local authority seeks to prevent the further use of quantities of valuable property, notwitstanding the fact that the use of the same has been heretofore legitimate, even essential in its nature to civilization. An examination of the averments of the bill of complainant discloses facts not only justifying this statement, but shows that the Laurel Hill Cemetery is not now, and never has been, and never will become, a nuisance, within the meaning of the Civil Code of California (section 3479), which defines what a nuisance is within that state; and that it is not true that burials of dead bodies within the aforesaid cemetery are dangerous to life and detrimental to the public health. Conditions are clearly shown in the complaint under which there could be no reasonable reason for denying the right of use and enjoyment; therefore the ordinance is subject to judicial investigation, unless, because of a recital that a measure is to protect public health, the power of the board may not be restrained at all. But as shown, this doctrine cannot be sustained.

An ordinance which arbitrarily prohibits the burial of bodies within an entire county, embracing large tracts of land unoccupied and remote from human habitation, where the public health and safety cannot possibly be endangered, is clearly unreasonable and void. Freund on

Police Powers, § 178; Los Angeles v. Hollywood Cemetery Association, 124 Cal. 344, 57 Pac. 153, 71 Am. St. Rep. 75; Lake View v. Letz, 44 Ill. 81; Musgrove v. Church of St. Louis, 10 La. Ann. 431; City of New Orleans v. St. Louis Church, 11 La. Ann. 244. If the cemetery in question has never been, and will not become, a nuisance, and is not dangerous to life or detrimental to the public health, it is not within the constitutional powers of the municipality to suppress it. Yates v. Milwaukee, 10 Wall. 505, 19 L. Ed. 984.

For the purpose of this hearing, the Laurel Hill Cemetery has not been, and is not now, indecent to the senses, or offensive, or an obstruction to the free use of property. The offensiveness must, as a rule, consist in actual physical discomfort, or a violation of the sense of decency. Mere undesirableness by reason of social or other prejudices is not sufficient, not even if it leads to a depreciation of property.

It has become a well-established principle that municipal police ordinances, like all other municipal ordinances, must be reasonable in order to be lawful. This principle was expressly recognized by Justice Henshaw in his concurring opinion in Odd Fellows' Cemetery Association v. San Francisco, 140 Cal. 226, 73 Pac. 987, cited upon argument by counsel for the board of supervisors, although upon the facts as they appeared in that case, he was of opinion that the local authorities had not exercised their power in an unwarranted or arbitrary way. Not having seen the full pleadings in the California case just cited, I am unable to state whether the facts considered by the learned court made as strong presentation of the rights of plaintiffs therein as do those pleaded by the complainant herein.

"It is possible to say that there is implied in every delegation of power to a municipal corporation a condition that the power must be exercised reasonably, and that therefore every unreasonable ordinance is ultra vires, and the court, in treating it as null and void, merely enforces the legislative will and principles of policy embodied in it." Freund, Police Powers, § 63; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; Toledo Ry. Co. v. City of Jacksonville, 67 Ill. 37, 16 Am. Rep. 611; Lake View v. Rose Hill Cemetery, 70 Ill. 191, 22 Am. Rep. 71.

While it is true that courts will go far to uphold legislative acts intended for the protection of public health, morals, or safety, even though they may be in themselves retroactive and destroy values invested in business or property, yet it is certainly carrying the exercise of the police powers to the extreme constitutional limit, where such business, or the use to which such property is put, is intrinsically harmless. In such instances, it should appear to the court that the conditions are such that the interests of the public generally justify such legislation, and that the act itself is reasonable in its scope and practical application. "The Legislature has no power, under the guise of police regulation, to invade arbitrarily the personal rights or liberties of the citizen." Lawton v. Steele, 152 U. S. 133–137, 14 Sup. Ct. 499, 501, 38 L. Ed. 385; Ruhstrat v. People of State of Illinois, 185 Ill. 133–141, 57 N. E. 41, 44, 49 L. R. A. 181, 76 Am. St. Rep. 30.

It cannot be said that the averments of the bill are untrue, in that the cemetery is per se a nuisance. Monk v. Packard, 71 Me. 311, 36 Am. Rep. 315. Like many other businesses, a cemetery may be so conducted

as to become a nuisance; but to prevent any such danger there is a full power of regulation under the law, which may be exercised in a way to compel the owners of the cemetery to conform to any rules conducive to public health in the matter of the interment of the dead. Let it be understood that a court will not abridge the legitimate exercise of police power, by limiting its use, where it has been exercised over those things reasonably essential to public safety, health, or morals, and where a public nuisance is to be destroyed, or where general public interests might, in the reasonable exercise of the discretion of the local authority, justify protection. There is a very large power to act for such interests. But the courts do maintain that such power shall not be arbitrarily exercised, and they will interfere wherever a case is presented which clearly does not involve the health or safety or comfort of the public. Here, as said, it is apparent that there is no attempt at regulation. Under the pleading, the ordinance amounts to the interdiction of a lawful business in the face of the fact that there is no impairment of, or danger to, either the health, safety, convenience or comfort of the public. It therefore is an unwarranted and arbitrary prohibition, and an ordinance which arbitrarily prohibits a lawful calling, without endeavor to regulate, is unreasonable and should be declared void.

It is undoubtedly true that the cemetery association, when it was originally given its grant, was subject to the inherent police power of the state and the municipality; but this general rule cannot be extended to justify use of the power by denying the right to carry on a lawful business, unless conditions exist which bring it within a cause authorizing the exercise of the power. Nor can it be disputed that the police power may be lawfully exercised with reference to cemeteries, as it may with reference to vaccination, to hours of labor, to the restriction of objectionable trades, to the prohibition of gambling, to the sale of liquor, and many other matters, where, in the discretion of the local authority, the interests of the public require protection; but an unwarranted and arbitrary interference with the constitutional right to carry on a lawful business and to use and enjoy property will not be upheld, though had under an ordinance apparently pertaining to police power. If it is arbitrary, there arises a case where scrutiny and supervision by the courts may be had to ascertain and decide whether the legislative right of a reasonable exercise of such power has or has not been exceeded. Manifestly, if the police power, even in respect to matters said to involve the public health, is permitted to go unlimited and is unquestionable, the rights of the citizen may always be subjected to the will of a municipal government, destructive though such will might be of the right to pursue a lawful business in a lawful way.

In Dobbins v. City of Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169, the court, by Justice Day, stated the doctrine under which this complainant may properly invoke the aid of this court to protect her rights. That was a case where the city council of Los Angeles adopted an ordinance making it unlawful to erect and maintain gasworks outside of a certain district described in the ordinance. While this ordinance was in effect, plaintiff made a contract with a certain

company for the erection of gasworks, and purchased lands within the limits of the privileged district, as fixed by the ordinance. Thereafter the board of fire commissioners of the city granted to the plaintiff the privilege to erect gasworks upon the territory referred to, and thereafter gasworks were being erected upon the premises purchased. Thereafter the city council passed a second ordinance, amending the first ordinance, and thereby so limiting the boundaries of the territories within which the erection of gasworks was permitted in the city of Los Angeles as to include the premises of the plaintiff within the prohibited territory. Employés of the company were arrested, charged with the violation of the city ordinance, and again, after the arrest, the city council passed another ordinance amending the second ordinance in respect to the description of the district within which gasworks could be erected, and thereafter certain persons employed by the company were arrested, charged with violating the amended ordinance. The plaintiff filed a bill of complaint against the city asking an injunction to restrain the enforcement of the ordinances prohibiting the erection or maintenance of gasworks except within prescribed limits in the city. She averred that the ordinances referred to were adopted by the council at the instigation of a certain corporation supplying gas to the city, and that the action was had for the purpose of protecting such corporation in the enjoyment of a monopoly, and that the ordinance, as amended, included a district within which there was a large amount of vacant and unoccupied land, which would be useless except for the erection of manufacturing establishments; that there was no danger to be apprehended from the works to be built by the plaintiff, and there would be no interference with the health, comfort, or safety of the inhabitants of the city. Plaintiff relied upon the protection of the fourteenth amendment to the Constitution of the United States, and asked that all ordinances passed by the city council in contravention of her rights be declared void. The Supreme Court of the state of California sustained the validity of the ordinances, basing its decision, as understood by the Supreme Court of the United States, upon the proposition that, as the exercise of the right to control the erection and construction of gasworks was within the power conferred by the Legislature upon the city, the act of the municipality could not be reviewed, because so to do would be substituting the judgment of the court for that of the council upon a question left within the exclusive control of the legislative body. The Supreme Court, however, was of the opinion that, under the principle that the exercise of police power is subject to judicial review and that property rights cannot be wrongfully destroyed by arbitrary enactment of ordinances, the ordinance was invalid, and that the city offered no reasonable explanation for the arbitrary exercise of power in the case. "It may be admitted," said the court, "that every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety, and that it is not the province of courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community. But notwithstanding this general rule of the law, it is now

thoroughly well settled by decisions of this court that municipal by-laws and ordinances, and even legislative enactments undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of the police power, or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the constitutional rights to carry on a lawful business, to make contracts, or to use and enjoy property."

In conclusion, I desire to express my acknowledgments for the aid given me by the learned and exhaustive arguments of the counsel who were heard upon the demurrer. I fully recognize that, between the broad principles applicable in the necessary maintenance of rights of the board properly comprehended within authority to exercise police power, and those rights which are guarantied to the individual by fundamental law, decision is difficult. But, upon careful reflection, my judgment is that the complainant has made a showing of such strength that the court must hold the ordinance in question to be oppressive and unreasonable, and that it infringes without warrant upon the right of the Laurel Hill Cemetery Association to carry on a lawful business. It follows that, by reason of the refusal of the association to allow complainant to bury the body she wishes to, such refusal being based upon the ordinance, her rights have been invaded; wherefore the ordinance is void, and complainant is entitled to the relief she asks.

The demurrer is therefore overruled.