No. 2869

Second Circuit

---

HARDIN v. HUCKABAY

---

(June 28, 1927. Opinion and Decree.)
(July 25, 1927. Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Burial Places—Par. 3.**

A public cemetery is not a nuisance per se and if the ground be arranged and ·drained and the burial of the dead be conducted in a proper manner, it will not be a nuisance, public or private.

2. **Louisiana Digest—Burial Places—Par. 3, 5.**

As public cemeteries for the orderly and decent burial of the dead are necessary requirements for all populous communities, private convenience must yield to the convenience of the public in fixing sites for them, and courts should be particularly careful not to interfere to prevent such establishments unless the mischief be undoubted and irrevocable.

3. **Louisiana Digest—Burial Places—Par. 3; Injunction—Par. 6, 8, 18, 35.**

If a cemetery be located near private residences and burial therein be conducted in an indecent or gruesome manner within sight of the inhabitants, or if the burial of the dead there will pollute the springs or wells of the inhabitants, or if the surrounding atmosphere will be corrupted with nauseous or noxious odors so as to endanger the health or interfere with the physical comfort of the inhabitants, it is a nuisance and courts will grant injunctive relief.

4. **Louisiana Digest—Burial Places—Par. 3.**

A public cemetery is not a nuisance and its establishment can not be prohibited because it depreciates the market value of the property in its neighborhood.

5. **Louisiana Digest—Burial Places—Par. 3, 5.**

Citizens who built their residences near to and within sight of an established public cemetery can not prohibit the enlargement of the old one when the only effect of the enlargement will be to establish tombs and monuments nearer to this property.

Appealed from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. J. H. Stephens, Judge.

Action by J. R. Hardin, et al against H. H. Huckaby, et al.

There was judgment for defendants and plaintiffs appealed.

Judgment affirmed.

Thigpen, Herold, Lee & Cousin, of Shreveport, attorneys for plaintiffs, appellants.

John B. Files, of Shreveport, attorney for defendants, appellees.

ODOM, J. Plaintiffs own property and reside in the town of Vivian. They seek, by this suit, to restrain the defendants from converting block 16 of that town into a cemetery and selling lots therein for burial purposes.

They allege, in substance, that the plot of ground which defendants are about to convert into a cemetery is located in the residential section of the town; that it was originally laid out and plotted for residential purposes; that upon the faith of said ground being laid out for such purposes they bought lots and built their residences in that vicinity; that they have dug wells upon their properties from which they use water, and that the burial of bodies in the proposed cemetery will pollute the waters of their wells; that the conversion of said property, which is in immediate proximity to their homes, into a cemetery will subject them and their families to the constant evidences and reminders of mortality; that they and their families will be confronted in their homes with funeral processions, views of coffins and actual interment of deceased persons, with mourners going to and coming out of the cemetery; that the effect of said views will be depressing to them, their wives and children, and that the psychological influence of these conditions will work irreparable injury to them, and that the establishment of the cemetery in that locality will cause their property to depreciate in value and thereby cause them material loss; and, finally, that the conversion of said property into a cemetery is a wrongful use of said property and will work irreparable injury to them.

Defendants, in answer, admitted that they are about to convert said property into a cemetery, but deny generally the other allegations of plaintiffs' petition; and they further allege that said property adjoins an old cemetery which was estab-

lished many years ago; that they are not establishing a new cemetery but merely enlarging the old one, in which there is but little more space, and that the enlargement of said cemetery is necessary for the public good, and that the mayor and board of aldermen of said town, by ordinance, approved the use of said property for cemetery purposes; and, finally, that a portion of said property is already in use as a burial ground.

The District Court rejected plaintiffs' demands and they have appealed.

### OPINION

Vivian is a town of about 2500 inhabitants. It was incorporated and platted many years ago. About the time it was incorporated there was established outside of and adjacent thereto, at the northwest corner, a cemetery which is now referred to as the old cemetery. The testimony shows that practically all the space in the old cemetery has been taken and that it has become necessary either to enlarge it or to establish a new one.

As far back as 1918 and especially in 1920 and 1921 the question of enlarging the old cemetery was agitated, the plan then suggested and discussed being to extend it down into the corporate limits of the town so as to include block 16 of the town, which block is in the northwest corner thereof and adjacent to the old cemetery. Nothing however, was done until 1926, when J. C. Smith, one of the defendants, was elected mayor. He proposed enlargement of the old cemetery by adding or annexing thereto block 16 of the town. He proposed to H. H. Huckabay, the other defendant, that he, Huckabay, purchase said block 16 and hold the same as trustee, the plan being to purchase the property, divide the same into burial plots, and sell them, the proceeds of the sale to be used, first to pay the purchase price of the property, and the balance to be used in beautifying and improving the property and to erect a pavilion and small park on the south side thereof. Huckaby bought the property and Smith was to sell the lots. Neither Huckaby nor Smith was to receive any profit, but Smith, it seems, expected to be paid for his services in selling the lots. On September 17, 1926, the mayor and town council adopted an ordinance approving the use of said property as a public cemetery. Smith advertised the lots for sale, sold some twelve or fifteen of them, and was stopped by these proceedings.

It is well settled that a cemetery is not a nuisance per se, although one may be so located, used and operated as to become such. The use of ground for a public cemetery is not unlawful. Act No. 136 of 1898, providing for the creation and government of municipalities, specifically grants to such corporations the power to acquire and hold property within or without the corporate limits of the town for cemeteries.

Not only is the use of property for cemeteries lawful but it may be added that it is as much the duty of municipal corporations or the public, as the case may be, to provide suitable places for the repose of the dead as to provide for the health and comfort of the living.

In 5 Ruling Case Law 233, the editors state the general rule of nuisance as applying to cemeteries as follows:

"As public cemeteries for the orderly and decent sepulture of the dead are necessary requirements for all populous communities, private convenience must yield to the convenience of the public in fixing sites for them, and the courts should be

particularly careful not to interfere to prevent such establishments unless the mischief be undoubted and irrevocable. The decided weight of authority may be said to be to the effect that a cemetery is not a nuisance per se * * * if the ground be arranged and drained and the burial of the dead be conducted in a proper manner, it will not be a nuisance, public or private."

If, on the contrary, the cemetery be located near private residences and burial therein be conducted in an indecent or gruesome manner within sight of the inhabitants, or if the burial of the dead there will pollute the springs and wells of the inhabitants, or if the surrounding atmosphere will be corrupted with nauseous and noxious odors so as to endanger the health or interfere with the physical comfort of the inhabitants, it is a nuisance and courts will grant injunctive relief.

There is no suggestion that the proposed cemetery will be operated otherwise than in an orderly and decent manner or that the burial of the dead there will be offensive to the physical senses. The testimony shows that it is the purpose of those who are promoting the enlargement of the cemetery to beautify the premises, to erect a small pavilion and park on the side next to plaintiffs' residences, and to make the premises as attractive as possible.

Plaintiffs seek to have the court hold that the use of block 16 as a burial ground will, as to them, constitute a nuisance for three reasons, briefly stated as follows:

First, that the waters of their wells will be polluted.

Second, that the value of their properties will be decreased; and

Third, that they and their families will be materially disturbed and depressed by the constantly recurring memorials of death, such as funeral processions and the sight of tombstones.

The first point falls for lack of proof. The testimony shows that only two of the six plaintiffs use water out of wells on their premises, and while these wells are within a comparatively short distance, the nearest one being 220 feet from the line of the property proposed as a cemetery. There is no testimony whatever to show that the waters of their wells will become polluted. The testimony indicates that the wells are supplied with water from a sand stratum some thirty feet beneath the surface, and there is nothing to show that even though water should drain towards them from the graveyard it would not be purified by its drainage through the sand and become perfectly wholesome when it reaches the wells. The other plaintiffs use water from pipe-lines, and therefore have no ground of complaint on this point.

On the second point, that is, as to whether the value of their properties would be depreciated on account of the use of block 16 for cemetery purposes, the testimony is conflicting. Each and every one of the plaintiffs testified that they would suffer material loss on that account. On the contrary, there were as many, if not more, witnesses on the other side who testified that the use of the property as proposed will not depreciate the price of plaintiffs' properties in the least, and they point out the fact that there are residences just across the street or road from the old cemetery and that it has never been claimed that the presence of the old cemetery has caused the value of these properties to depreciate.

It is probably true that the witnesses called on the other side are partisan, and

we have no doubt that their opinions are influenced at least to some extent by their interest in this suit. The testimony as a whole impresses us that it is probably true that plaintiffs could not at this time realize as much for their properties as they could some time ago, but we are not convinced that the depression in price has been brought about by the presence of the proposed cemetery. Vivian is what is generally termed a "boom town." The discovery of oil in that vicinity caused it to grow rapidly, but the "boom" subsided, and there is testimony to the effect that not only has the price of property in that section taken a slump but the same is true in other parts.

We think plaintiffs' injury in this respect is more fancied than real.

However, if it should be conceded that plaintiffs have suffered some damage on that account, it does not follow that they have a right of action on that ground.

The testimony shows that it is to the interest and convenience of the general public that this particular piece of ground be annexed to the old cemetery and be used for a burial ground and that the vast majority of the inhabitants of the town want it so annexed and used, and, as stated, the governing authorities of the town have approved, by ordinance, its use as such.

As already stated, it is not proposed to establish a new cemetery but merely to enlarge the old one by taking in this property. The old cemetery cannot be extended in any other direction, and it is thought by the governing authorities of the town and by a majority of the inhabitants thereof that the best interests of the public will be subserved by the enlargement of the old cemetery rather than the establishment of a new one. Un-

der such circumstances, the private rights of the citizens, insofar as property values are concerned, must yield to public convenience and necessity, the use of the property for a cemetery being lawful.

In the case of Dunn vs. Austin, 77 Texas 139, 11 S. W. 1125, and in Elliott vs. Ferguson, 37 Texas * * * 83 S. W. 86, it was specifically held that the mere fact that property is rendered less valuable by the proposed establishment of a cemetery near it, is not good ground for an injunction to restrain its use as such; and in Lambert vs. City of Norfolk, 108 Va. 259, 61 S. E. 776, it was held that a statute providing that the owners of adjacent property shall have a right of action when damage is done to property by the establishment of a cemetery, has reference to injuries to the corpus of the property or some right connected therewith, and that it does not give to the owner of adjacent property a right to recover because the cemetery renders his property less desirable or valuable.

See 5 Ruling Case Law 237.

In City of New Orleans vs. The Wardens of the Church of St. Louis, 11 La. Ann. 244, the court held, to quote the syllabus:

"A cemetery is an indispensable part of every city, or town, and wherever situated, must be in the neighborhood of private property. Such cemetery is not a nuisance because it depreciates the marketable value of the property in its neighborhood."

In Rea vs. Tacoma Mausoleum Association, 103 Wash. 429, 174 Pac. 961, it was held that the erection within a few feet of a dwelling of a mausoleum for the burial of the dead cannot be enjoined, although its presence would seriously affect the value of the property, if there would be no fumes or drainage to affect

the physical senses or health of those in the neighborhood.

See, to the same effect, the case of Hume vs. Laurel Hill Cemetery, 142 Fed. 552 (565), and Woodstock Burial Grounds Association vs. Haber, 35 Atl. 431.

Plaintiffs' last and apparently most serious complaint is that the members of their families will be annoyed and depressed by the funeral processions and the constant recurring memorials of death.

Conceding that to be true, the enlargement of the cemetery, as now proposed, will not make conditions worse for them in that respect than they have been during all the years they have lived in their present residences.

The testimony shows that they live within sight of the entrance to the old cemetery, which has been used over a period of many years, and which had been established and used long before these plaintiffs purchased the lots on which they built their residences.

The testimony also shows that practically every funeral procession which passes into the old cemetery passes directly in front of their residences or in close proximity to and within sight thereof. The residences of five of the six plaintiffs front on Tennessee street, not towards the graveyard. That street leads west from the main portion of the town towards the cemetery. One of the churches of the city is on that street. Funeral processions proceed from the church out that street, passing directly in front of their homes, and if not on that street, on one only a block away and within sight. Whichever way they go, they enter the cemetery as now established in plain view. These conditions prevailed when and long before plaintiffs established themselves where they now live.

The testimony shows that the entrance to the cemetery, as extended, will be the same as the entrance to the old cemetery. The enlargement of the cemetery will, it is true, bring it nearer to plaintiffs' homes, but the number of funeral processions, about which plaintiffs complain, will be no more numerous in the future than in the past.

The enlargement of the cemetery as proposed at this time will not be any invasion of their rights and we fail to see that conditions for them will be made any worse, except that, as stated, the graveyard will be brought a little nearer to them. When they built their present residences they were confronted with the very conditions of which they now complain. For that reason, we think plaintiffs' have no right to complain.

But as counsel have so strenuously stressed the point that a cemetery is a nuisance even though there is nothing about it to injure the health of the inhabitants or offend their physical senses merely and solely because the presence of funeral processions and monuments of the dead sadden and depress them, we go further and state that we do not think that alone is sufficient ground for relief.

In order to become a nuisance, a cemetery must produce actual, physical discomfort or violate the sense of decency. Mere undesirableness by means of social or other prejudice is not sufficient. The law will not declare a thing a nuisance merely because it is unpleasant to the eye and a violation of good taste. The law guards and upholds the material rights of the citizens, but it cannot go further and suppress the use of property for lawful and necessary purposes solely because such use offends the esthetic tastes of the individuals and may cause them unpleasant thoughts.

In support of these conclusions, we cite the following cases.

Rea vs. Tacoma Mausoleum Assn. 174 Pac. 961.

Hume vs. Laurel Hill Cemetery, 142 Fed. 552, et seq.

Belleview Cemetery Co. vs. McEvers, 50 South. 272.

Musgrove vs. Catholic Church, 10 La. Ann. 431.

Barnes vs. Hawthorn, 54 Me. 124.

Woodstock Burial Grounds Assn. vs. Haber, 68 Vt. 488, 35 Atl. 431.

Lambert vs. City of Norfolk, 108 Va. 259, 51 S. E. 776.

Ellison vs. Commissioners, etc., 58 N. C. 57; 75 Am. Dec. 430.

Counsel have cited but few decisions in support of their respective contentions, but we have made an independent investigation of the authorities and have read many decisions on the subject and have found no decision in which injunctive relief was granted a property owner upon the sole ground of the mere presence of a cemetery or other place for the burial of the dead.

We have found many cases where the courts have suppressed the use of ground as cemeteries, but those cases are uniformly based upon proof of offensive drainage or fumes. A superficial reading of some of the cases might lead to a different conclusion, but when critically examined it will be found that there was proof of the emission of offensive fumes or drainage affecting the health or physical senses of the inhabitants.

Counsel for plaintiffs cite the case of Osborn vs. City of Shereveport, 143 La. 932, 79 South 542, in which it was held that in the absence of any prohibitive ordinance an undertaker may be prevented from establishing his business among residences where such business has not theretofore been conducted.

That case is easily distinguishable from the case at bar. The major question presented in that case was whether the city of Shreveport possessed the power and authority to prevent the location of establishments in certain sections of the city where nauseous and unwholesome businesses may be carried on and to restrict the same within certain limits, and the court maintained the city's right to do so.

But it was also held that in the absence of a prohibitory ordinance an undertaker could be prohibited from establishing his business in residential sections where none such had been before. But the court was there considering an undertaking establishment and not a cemetery. There is a vast difference between the facts before the court in that case and those in the case at bar. In that case it was admitted by the witnesses called for the undertaker that—

"a swollen corpse, salvaged from the river, in midsummer, emits an unpleasant odor."

The court speaks of a "stench" being emitted from such establishments, and says:

"The courts, we think, may safely take it for granted that, with rare exceptions, civilized human beings are in a greater or less degree made uncomfortable by foul odors, and by none more so than by those emitted from a badly decomposed human body."

"It may be that bad cases are infrequent in plaintiff's establishment, and that the stench emitted by them is 'brought under control' as rapidly as possible; but a single experience of air so laden would,

as we imagine, more than satisfy the average individual for the period of his natural life, and 15 minutes would be quite long enough for the experience."

While it is true that the court, in commenting, said that to the incidents mentioned there is to be added the fact that the business is itself a gruesome one and mentioned the psychological influence of being confronted with

"death, and its woeful trappings in the shape of hearses and other vehicles, carrying in and out of a neighboring building the mortal remains of some fellow being, is no more enlivening nor wholesome than would be the constant presence of the same corpse, or the immediate proximity of a grave yard."

It is apparent, however, that the court's decision was influenced by the fact that an undertaking establishment is a gruesome one and that at times a stench is emitted therefrom, even though such business is conducted in the most careful manner and under approved methods; and the same thought, we think, underlies all the decisions where courts have suppressed the use of property as grave yards.

In the case at bar, there is no suggestion that the grave yard will be offensive in the least to the physical senses.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs.