## A. RUHSTRAT
### *v.*
## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 17, 1900.*

| 185 | 133 |
| f185 | 342 |
| 185 | 133 |
| 193 | ³344 |
| 193 | ³346 |
| 193 | ⁵350 |
| 185 | 133 |
| 202 | ⁸403 |
| 185 | 133 |
| 214 | ¹639 |
| 114a | ¹381 |

1. POLICE POWER—*limits of exercise of police power.* The exercise of police power by the legislature is limited to enactments tending to promote the public health, morals, safety or general welfare.

2. SAME—*what is the subject of police power is a judicial question.* It is for the legislature to determine when an exigency exists for the exercise of police power, but what is the subject of such exercise is a judicial question.

3. SAME—*police power does not authorize arbitrary invasion of personal rights or liberty.* The legislature has no power, under the guise of police regulations, to arbitrarily invade the personal rights or liberties of a citizen.

4. SAME—*legislature is not sole judge as to what business regulations are reasonable.* The legislature is not the sole judge as to what is a reasonable or just restraint upon the right of a citizen to pursue his own calling and to exercise his own judgment as to the manner of conducting and advertising his business.

5. TRADE—*"liberty" includes right to choose and follow a particular business.* The term "liberty," as used in the Bill of Rights in the constitution, includes the right of every citizen to choose and follow a particular business and to conduct and advertise it in any legitimate manner, subject only to the restraints necessary to secure the common welfare.

6. SAME—*use of flag trade-mark or label is not harmful in itself.* The use of the likeness of the national flag upon a label or trade-mark for advertising purposes cannot be regarded as an act which is harmful in itself.

7. SAME—*right to use flag trade-mark is a "privilege."* The use of the likeness of the national flag for trade-marks and labels has been sanctioned by the Federal authorities in charge of the enforcement of the trade-mark laws, and the absence of Congressional prohibition thereof has created a "privilege" which citizens of the United States may enjoy free from State interference.

8. CONSTITUTIONAL LAW—*Flag law of 1899 is unconstitutional.* The Flag law of 1899 (Laws of 1899, p. 234,) is unconstitutional, not only as infringing upon the personal liberty guaranteed by the constitution, but as depriving citizens of the United States of a "privilege," in contravention of section 1 of the fourteenth amendment to the Federal constitution.

WILKIN and CARTER, JJ., and CARTWRIGHT, C. J., dissenting.

WRIT of ERROR to the Criminal Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

The plaintiff in error was prosecuted and convicted for violation of an act of the legislature of Illinois, entitled "An act to prohibit the use of the national flag or emblem for any commercial purposes or as an advertising medium," approved April 22, 1899, in force July 1, 1899. (Laws of Ill. 1899, p. 234). The following is a copy of the act in question:

"Sec. 1. It shall be unlawful for any person, firm, organization or corporation to use or display the national flag or emblem, or any drawing, lithograph, engraving, daguerreotype, photograph or likeness of the national flag or emblem, as a medium for advertising any goods, wares, merchandise, publication, public entertainment of any character or for any other purpose intended to promote the interests of such person, firm, corporation or organization.

"Sec. 2. Nothing in this act shall be construed as affecting either public or private exhibitions of art, or shall in any way restrict the use of the national flag or emblem for patriotic purposes.

"Sec. 3. All prosecutions under the provisions of this act shall be brought by any person in the name of the People of the State of Illinois, against any person or persons violating any of the provisions of this act, before any justice of the peace of the county in which such violation is alleged to have taken place, or before any court of competent jurisdiction; and it is hereby made the duty of the State's attorney to see that the provisions of this act are enforced in their respective counties, and they shall prosecute all offenders on receiving information of the violation of any of the provisions of this act; and it is made the duty of the sheriffs, deputy sheriffs, constables and police officers to inform against and prosecute all persons whom there is probable cause to

believe are guilty of violating the provisions of this act; one-half of the amount recovered in any penal action under the provisions of this act shall be paid to the person filing the complaint in such action, and the remaining one-half to the school fund of the county in which the said conviction is obtained.

"Sec. 4. All prosecutions under this act shall be commenced within six months from the time such offense was committed, and not afterwards.

"Sec. 5. Any persons violating the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than $10 nor more than $100 and costs, and in default of payment of said fine and costs imposed shall be imprisoned in the county jail at the rate of one day for each dollar of fine and costs imposed."

Plaintiff in error, A. Ruhstrat, and his partner, Allen S. Curlett, are co-partners under the firm name of Ruhstrat & Curlett in the wholesale and retail cigar business in the city of Chicago. They used pictures of the national flag upon cigar box labels for the purpose of advertising and selling certain brands of their cigars by means of such advertisement. Plaintiff in error was arrested for a violation of said act, and, on trial before a justice of the peace, was fined $50.00 and costs. He took an appeal to the criminal court of Cook county, and, upon trial of the case in the latter court, he was found guilty and fined $10.00. Motions for a new trial and in arrest of judgment were made and overruled. Judgment was rendered upon the finding of the court, a jury having been waived, and plaintiff in error was fined $10.00 and costs. The present writ of error is prosecuted from this judgment of the criminal court of Cook county.

Specimens of the labels used by the plaintiff in error upon his cigar boxes are in the record. One of these labels is a pictorial representation with a female head in the center and a picture of the American flag in the upper

left-hand corner. Another of the labels is a pictorial representation with the likeness of Nansen, the explorer, in the center of a wreath, around one side of which is entwined an American flag. Another label is a pictorial representation with a likeness of President Lincoln in the center, and a view of the capitol building at Washington in the distance; and upon the right-hand of the representation is a picture of the American flag. Still another label is a pictorial representation with a female figure in the center, holding in her right hand a shield containing upon it a picture of the American flag.

The plaintiff in error, upon the trial below, submitted to the court, to be held as law in the decision of the case, certain propositions to the effect, that the act in question was illegal and void as being in violation of the constitutions of the State of Illinois and of the United States. These propositions were refused, and exception was taken to the refusal of the same. The reasons, assigned in support of the motions for a new trial and in arrest of judgment, were also the alleged invalidity of the act as being in conflict with the Illinois and Federal constitutions.

HOFHEIMER & PFLAUM, for plaintiff in error:

The flag is the property of the people of the United States, and is emblematic of national as distinguished from State sovereignty. U. S. Rev. Stat. secs. 1791, 1792.

The nation is a sovereign power, separate and distinct from State sovereignty. *Lane County* v. *Oregon*, 7 Wall. 71; *Collector* v. *Day*, 11 id. 113; Wilson's Works, 7, 8.

The act is in conflict with the fourteenth amendment to the Federal constitution and article 2 of the constitution of the State of Illinois. *People* v. *Gilson*, 109 N. Y. 389; *In re Jacobs*, 98 id. 98; *Slaughter-house cases*, 16 Wall. 113; *Braceville Coal Co.* v. *People*, 147 Ill. 66.

The passage of the Flag law cannot be justified under the police powers of the legislature. Acts passed under this power must be "clearly necessary for the safety,

comfort and welfare of society." They must be reasonable. What are the subjects of the exercise of the police power is a judicial question. Tiedeman on Lim. of Police Power, sec. 3, p. 12; *In re Jacobs,* 98 N. Y. 108; *Civil Rights cases,* 109 U. S. 11; *People* v. *Gilson,* 109 N. Y. 389; *Ex parte Whitwell,* 32 Pac. Rep. 870; Cooley's Const. Lim. (6th ed.) 606, 607, 744; *Frorer* v. *People,* 141 Ill. 171; *Mugler* v. *Kansas,* 123 U. S. 623; *Ah Kow* v. *Nunan,* 5 Sawyer, 552; *Lake View* v. *Rose Hill Cemetery,* 70 Ill. 191.

CHARLES S. DENEEN, State's Attorney, and F. L. BARNETT, for the People:

Plaintiff in error, to maintain his contention that the law is in violation of the constitution of Illinois, must indicate the constitutional provision which is violated. *People* v. *Wiccard,* Legal News, Oct. 7, 1899.

The Flag law does not conflict with the Federal constitution. State enactments under the police power are supreme unless there is a grant of exclusive authority to Congress. *Slaughter-house cases,* 16 Wall. 77; *Patterson* v. *Kentucky,* 97 U. S. 604; *Ex parte Siebold,* 100 id. 371; *Bank* v. *Commonwealth,* 9 Wall. 853; *Mugler* v. *Kansas,* 123 U. S. 664; *Bank* v. *New York City,* 67 id. 610.

The act in question is the valid exercise of the police power of the State. Its purpose is to promote the welfare of society. The law must be presumed to be constitutional, and all doubts must be resolved in its favor. *Holden* v. *Hardy,* 37 L. R. A. 103; *Newland* v. *Mann,* 19 Ill. 384; *Railroad Co.* v. *Smith,* 62 id. 271; Cooley's Const. Lim. (5th ed.) 202.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The provisions of the constitution of Illinois, which the terms of the act of April 22, 1899, known as the "Flag law," are alleged to contravene, are sections 1, 2 and 4 of article 2 and section 22 of article 4. Section 1 of ar-

ticle 2 is as follows: "All men are by nature free and independent, and have certain inherent and inalienable rights—among these are life, liberty, and the pursuit of happiness. To secure these rights and the protection of property, governments are instituted among men, deriving their just powers from the consent of the governed." Section 2 is as follows: "No person shall be deprived of life, liberty or property, without due process of law." Section 4 of the same article provides, that "every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty," etc. Section 1 of article 14 of the amendments to the constitution of the United States is as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The expression, "life, liberty, and the pursuit of happiness," is general in its character, and includes many rights which are inherent and inalienable. Many of the rights referred to in this expression are included in the general guaranty of "liberty." The happiness here referred to may consist in many things or depend on many circumstances, but it unquestionably includes the right of the citizen to follow his individual preference in the choice of an occupation. (Black on Const. Law, p. 404). "The right of every man to choose his own occupation, profession, or employment, though not expressly guaranteed by the constitutions, is included in the right to the pursuit of happiness." (Ibid. p. 411).

In *Powell* v. *Pennsylvania,* 127 U. S. 678, the general proposition, that the enjoyment by the citizen, upon terms of equality with all others in similar circumstances,

of the privilege of pursuing an ordinary calling or trade, and of acquiring, holding, and selling property, is a general part of his rights of liberty and property as guaranteed by the fourteenth amendment, was assented to by the Supreme Court of the United States, as embodying a sound principle of constitutional law. In the latter case, it was also held, that, although the power and discretion which a State legislature has in the matter of promoting the general welfare and of employing means to that end are very large, yet such power must be so exercised as not to impair the fundamental rights of life, liberty, and property.

In *Allgeyer* v. *Louisiana*, 165 U. S. 578, it was said: "The right to follow any of the common occupations of life is an inalienable right. It was formulated as such in the phrase 'pursuit of happiness' in the Declaration of Independence, which commenced with the fundamental proposition, that 'all men are created equal; that they are endowed by their Creator with certain inalienable rights; and that among these are life, liberty, and the pursuit of happiness.' This right is a large ingredient in the civil liberty of the citizen." It was also said in this case that "the liberty of pursuit—the right to follow any of the ordinary callings of life—is one of the privileges of a citizen of the United States." It was also there said: "If it does not abridge the privileges and immunities of a citizen of the United States to prohibit him from pursuing his chosen calling, and giving to others the exclusive right of pursuing it, it certainly does deprive him (to a certain extent) of his liberty; for it takes from him the freedom of adopting and following the pursuit which he prefers; which, as already intimated, is a material part of the liberty of the citizen." (*Butchers' Union Co.* v. *Crescent City Co.* 111 U. S. 746).

In *Braceville Coal Co.* v. *People*, 147 Ill. 66, we said (p. 71): "Liberty, as that term is used in the constitution, means not only freedom of the citizen from servitude and re-

straint, but is deemed to embrace the right of every man to be free in the use of his powers and faculties, and to adopt and pursue such avocation or calling as he may choose, subject only to the restraints necessary to secure the common welfare." (*Frorer* v. *People*, 141 Ill. 171; *Perry* v. *Commonwealth*, 155 Mass. 117; *People* v. *Gillson*, 109 N. Y. 389; *Live Stock Ass.* v. *Crescent City*, 1 Abb. 388; *Slaughterhouse cases*, 16 Wall. 36; *Goodcharles* v. *Wigeman*, 113 Pa. St. 431; *State* v. *Goodwill*, 33 W. Va. 179).

The plaintiff in error was engaged in the wholesale and retail cigar business. This was certainly a lawful and respectable business. Under the authorities referred to and under the interpretation of the constitution there made, plaintiff in error had not only the right to choose the business, in which he was engaged, as his occupation, but he had the right to pursue and carry on that business in any way and by any methods which were lawful and proper. Included in "the right to choose one's occupation is the right to be free from unlawful interference or control in the conduct of it." (Black on Const. Law, p. 412). In these days of commercial enterprise, advertising is an important factor in business pursuits. It cannot be denied that the plaintiff in error had a right to advertise his business in any legitimate manner, so as to attract the attention of the public. Nor can it be denied that the plaintiff in error had the right to design and make use of a trade-mark. The use of trade-marks is as old as commerce itself. The conventional trade-mark is a part of what is called "the symbolism of commerce." (Browne on Trade-marks,—2d ed.—secs. 1, 26).

It is allowable to use a picture as a trade-mark; and a picture made up of many objects in many colors may be a trade-mark. (Ibid. secs. 258, 259). Browne, in his work on Trade-marks (sec. 265) says: "Color may be of the essence of a mark of manufacture or commerce, known as a trade-mark. National flags are sometimes blended with other objects to catch the eye. They are admirably

adapted to all purposes of heraldic display, and their rich glowing colors ,appeal to feelings of patriotism, ånd win purchasers of the merchandise to which they are affixed. * * * One flag printed in green may catch the eye of a son of the Emerald Isle; * * * another flag, with stars on a blue field and stripes of alternate red and white, may secure a preference for the commodity upon which it is stamped."

The right of the citizen to pursue the calling which he has chosen, and to advertise his business in a legitimate way by the use of labels or trade-marks, is not improperly exercised by making a picture of the national flag a part of such labels or trade-marks, unless thereby the public safety, welfare or comfort is interfered with.

It is claimed on the part of the People, that the Flag law in question was enacted by the State legislature in the exercise of its police powers. The law is justified upon the alleged ground, that it is an enactment under and by virtue of the police power of the State; and that, being enacted under and by virtue of that power, the courts cannot exercise a supervision over the wisdom and judgment of the legislature in its passage. It is claimed that the law tends to elevate the morals and promote the welfare of the public; and that, as such, it is a valid exercise of legislative power.

The police power is limited to enactments which have reference to the public health or comfort, the safety or welfare of society. Laws, which impose penalties on persons and interfere with the personal liberty of the citizen, cannot be constitutionally enacted, unless the public health, comfort, safety or welfare demands their enactment. It is for the legislature to determine when an exigency exists for the exercise of this power, but what are the subjects of its exercise is clearly a judicial question. The exercise of legislative discretion is not subject to review by the courts when measures adopted by the legislature are calculated to protect the public health

and secure the public comfort, safety or welfare; but the measures so adopted must have some relation to the ends thus specified. (*Ritchie* v. *People*, 155 Ill. 98). The legislature has no power, under the guise of police regulations, to arbitrarily invade the personal rights and personal liberty of the individual citizen. Its determination upon this question is not final or conclusive. If it pass an act ostensibly in the exercise of the police power, but which in fact interferes unnecessarily with the personal liberty of the citizen, the courts have a right to examine the act and see whether it relates to the objects which the exercise of the police power is designed to secure, and whether it is appropriate for the promotion of such objects. When the police power is exerted for the purpose of regulating a useful business or occupation and the mode in which that business may be carried on or advertised, the legislature is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue his calling, and to exercise his own judgment as to the manner of conducting it. The general right of every person to pursue any calling, and to do so in his own way, provided that he does not encroach upon the rights of others, cannot be taken away from him by legislative enactment. (Tiedeman on Lim. of Police Power, sec. 3; *In re Jacobs*, 98 N. Y. 108; *People* v. *Gillson, supra;* Cooley on Const. Lim.—6th ed.—pp. 606, 607, 744; *Ex parte Whitwell*, 32 Pac. Rep. 872; 98 Cal. 73; *Frorer* v. *People, supra; Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191; *Ritchie* v. *People, supra).*

In *Mugler* v. *Kansas,* 123 U. S. 623, it was said: "If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts so to adjudge, and thereby give effect to the constitution." In *Eden* v. *People,* 161 Ill. 296, we said (p. 308): "If the act

were one calculated to promote the health, comfort, safety
and welfare of society, then it might be regarded as an
exercise of the police power of the State. In *Toledo, Wa-
bash and Western Railway Co.* v. *City of Jacksonville*, 67 Ill.
37, it was held that, if the law prohibits that which is
harmless in itself, or requires that to be done which does
not tend to promote the health, comfort, safety or wel-
fare of society, it will, in such case, be an unauthorized
exercise of power, and it will be the duty of the courts
to declare such legislation void."

It is difficult to see how the Flag law of April 22, 1899,
tends in any way to promote the safety, welfare or com-
fort of society. The use of a likeness of the flag upon a
label or as part of the trade-mark of a business man in
the lawful prosecution of his business, cannot be regarded
otherwise than as an act which is harmless in itself. It
may violate the ideas, which some people have of senti-
ment and taste, but the propriety of an act, considered
merely from the standpoint of sentiment and taste, is a
matter, about which men of equal honesty and patriotism
may differ.

The act in question is severe in its terms. It makes it
the duty of the State's attorney to prosecute all persons
guilty of a violation of the provisions of the act, and
makes it the duty of sheriffs, deputy sheriffs, constables,
and police officers to inform against all persons "whom
there is probable cause to believe are guilty of violating
the provisions of this act; one-half of the amount recov-
ered in any penal action under the provisions of this act
shall be paid to the person filing the complaint in such
action, and the remaining one-half to the school fund of
the county. * * * Any persons violating the provi-
sions of this act shall be deemed guilty of a misdemeanor,
and upon conviction, shall be punished by a fine of not
less than $10.00, nor more than $100.00 and costs, and in
default of payment of said fine and costs imposed shall
be imprisoned in the county jail," etc. What is the offense

for which these penalties are imposed? The using or dis-playing of the national flag or emblem or any drawing or likeness of the same "as a medium for advertising any goods, wares, merchandise, publication, public entertain-ment of any character or for any other purpose intended to promote the interests of such person, firm, corpora-tion or organization," so using or displaying the same. Section 2 of the act provides that the use of the national flag or emblem for patriotic purposes shall not in any way be restricted. It is not altogether clear that a per-son might not make use of or display the national flag or emblem for a purpose intended to promote his own inter-ests, and yet, at the same time, for an entirely patriotic purpose. It is not clear that the prohibition, leveled against the use or display of the flag, tends in any way to elevate the morals or promote the welfare of the public.

The flag is used, in the prosecution of commerce upon the high seas, as a symbol of nationality. The nation-ality of a ship is determined by the flag which it carries. A ship, navigating under the flag and pass of a foreign country, is to be considered as bearing the national char-acter of the country under whose flag she sails. Under what is called, in international law, "the law of the flag," a ship-owner, who sends his vessel into a foreign port, gives notice by his flag to all who enter into contracts with the ship-master, that he intends the law of that flag to regulate those contracts, and that they must either submit to its operation or not contract with him or his agent at all. (1 Bouvier's Law Dic.—Rawle's Rev.— pp. 799, 800).

It is a doctrine of international law that a ship be-comes hostile so soon as she hoists the enemy's flag; and while the cargo of the ship does not necessarily take character from the flag, yet the general rule is that the goods under such flag follow the fate of the vessel. (11 Am. & Eng. Ency. of Law, p. 480, note 3). It is diffi-cult to see why, if in the prosecution of foreign commerce

or trade, the flag is used to protect a ship and cargo and designate its character, it should be a desecration of the same flag to use a likeness of it upon a label or trade-mark in the prosecution of domestic trade or business.

A flag is emblematic of the sovereignty of the power which adopts it.   The American flag is emblematic of the sovereignty of the United States.   Congress, by sections 1791 and 1792 of the Revised Statutes of the United States, has provided as follows: "The flag of the United States shall be thirteen horizontal stripes, alternate red and white; and the union of the flag shall be thirty-seven stars, white in a blue field.   On the admission of a new State into the Union, one star shall be added to the union of the flag; and such addition shall take effect on the fourth day of July then next succeeding said admission."

In *The Collector* v. *Day*, 11 Wall. 113, it was said: "The general government, and the States, although both exist within the same territorial limits, are separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres.   The former in its appropriate sphere is supreme; but the States within the limits of their powers not granted, or, in the language of the tenth amendment, 'reserved,' are as independent of the general government as that government within its sphere is independent of the States."   The State of Illinois has never adopted a flag emblematic of its sovereignty.   The flag is the flag of the United States as a sovereignty.   The United States, acting through its Congress, has adopted a flag emblematic of national sovereignty.   Presumably, the national flag was adopted for the use of the citizens of the United States.   There is a difference between the privileges and immunities belonging to the citizens of the United States as such, and those belonging to the citizens of each State as such.   The privileges and immunities of citizens of the United States are those, which arise out of the nature and essential character of the national government, the provisions of

185—10

its constitution, or its laws and treaties made in pursuance thereof; and it is these rights which are placed under the protection of Congress by the fourteenth amendment. (*People* v. *Loeffler,* 175 Ill. 585; *Slaughter-house cases,* 16 Wall. 36). The right to use or display the flag would seem to be a privilege of a citizen of the United States, rather than the privilege of a citizen of any one of the States. The national government, in the exercise of its inherent power to establish a flag or emblem symbolic of national sovereignty, has passed sections 1791 and 1792 above referred to, and has thereby taken jurisdiction of the subject matter of a national flag, and has legislated upon it. Congress has passed no legislation restricting the use of the flag, or confining its use to any particular purpose. It would seem that, if it had been the intention of Congress to restrict or confine such use, some provision to that effect would have been embodied in the act prescribing and describing the national flag.

The use of the flag of the United States, as embodied in advertising sheets and placards and labels and in common law trade-marks, has received the unqualified approval of the whole commercial world. It has also received the sanction of those having in charge the execution of the trade-mark laws of the United States. The usage and practice of employing a flag for commercial purposes have been indulged in by citizens of the United States with the knowledge of the national government. The absence of Congressional prohibition against the usage and practice, thus indulged in with the knowledge of the general government, has created a "privilege" in the citizens of the United States to continue such use until withdrawn by the competent authority. An act of legislation, passed by a particular State, which deprives the citizen of such privilege, contravenes that clause of the amendment to the national constitution which forbids any State to abridge the privileges and immunities of a citizen of the United States. If the State legislature can

restrict the use of the national flag, and permit its use for one purpose, and prohibit its use for another purpose, it would have the right to prohibit its use altogether within the limits of the State. But it cannot be pretended that the State of Illinois has authority to prohibit the use of the national flag altogether. It necessarily follows that it has no authority to prohibit its use for certain purposes.

We are of the opinion that this law is unconstitutional, not only as infringing upon the personal liberty guaranteed to the citizen by both the Federal and State constitutions, but also as depriving a citizen of the United States of the right of exercising a privilege impliedly, if not expressly, granted to him by the Federal constitution.

The act is also unduly discriminating and partial in its character. It exempts from penalties imposed by the act persons who may choose to make use of the national flag or emblem for either public or private exhibitions of art. The exhibitor, who engages in public or private exhibitions of art, may do so not merely for the public benefit, but for the promotion of his own interests. By thus excluding artists or exhibitors from the inhibitions of section 1 of the act, the act thereby creates a class or classes of persons who are exempted from the penalties embraced therein. Legislation of this kind has frequently been condemned by the courts in this country. The legislature clearly has no power to deny to plaintiff in error the right to use the national flag to advertise his business, or, in other words, to deny to all persons following particular occupations the right to use the national flag, and, at the same time, to permit artists or art exhibitors to use the same. The manner, in which the act thus discriminates in favor of one class of occupations and against all others, places it in opposition to the constitutional guaranties hereinbefore referred to. (*Millett* v. *People*, 117 Ill. 294; *Ritchie* v. *People*, 155 id. 98).

For the reasons herein set forth the judgment of the criminal court of Cook county is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

WILKIN and CARTER, JJ., and CARTWRIGHT, C. J., dissenting.