## IN RE CAHN, BELT, & COMPANY.

---

TRADEMARKS; REGISTRATION; ARMS AND SEALS OF STATES; PUBLIC POL-
ICY; CONSTRUCTION OF STATUTES.

1. Under sec. 5 of the act of Congress of February 20, 1905, a pictorial representation of the arms and seal of a State, which, though containing certain additions and variations, simulates such arms and seal, is not entitled to registration as a trademark.

2. The last proviso of sec. 5 of the trademark act of February 20, 1905, providing that "nothing herein shall prevent the registration of any mark" which has been for ten years in the exclusive use of the applicant, applies only to marks which are not technical trademarks, and the registration of which is not prohibited elsewhere in the section.

3. No person can acquire an exclusive right, as against a State, to the use of the State coat of arms as a mark; and hence a mark simulating the arms or seal of a State, although containing certain additions and variations, is not entitled to registration under the last proviso

of sec. 5 of the trademark act of February 20, 1905, which provides "that nothing herein shall prevent the registration of any mark" which has been in the "exclusive" use of the applicant for ten years prior to the passage of the act.

4. The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. The letter of a statute should not be followed when it leads away from the true intent and purpose of the legislature, and to conclusions inconsistent with the general purpose of the act.

No. 337.   Patent Appeals.   Submitted January 12, 1906.   Decided March 7, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents refusing to grant an application for a trademark.

*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Arthur Steuart, Mr. Frank M. Phelps,* and *Mr. M. R. Walter* for the appellants.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice McCOMAS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents affirming the decision of the Examiner of Trademarks refusing to register in the Patent Office an alleged trademark.

The application of Cahn, Belt, & Company for registration was made under the act of February 20, 1905. This appeal was taken under section 9 of that act.

This act of February 20, 1905, intended to authorize the registration of trademarks and to protect the same. It went into effect April 1, 1905, and on that day the appellants, Cahn, Belt, & Company, filed in the Patent Office an application for the registration of the mark used upon whisky, the mark being thus described in the application: "A pictorial representation

of the arms and seal of the State of Maryland, with certain additions or variations, as follows: The shield bears upon its face a representation in solid black of a trefoil or clover leaf, or the device termed a 'club' used upon playing cards. Upon the breast of the eagle, above the shield is a monogram of the letters 'C. B. & Co.' Within and close to a circular border which surrounds the coat of arms are the words 'The Great Seal of Maryland' and the numbers '1632' and '1854.' Between this border and an outer circle are the words 'Maryland Club Pure Old Rye Whiskey, C. B. & Co. Special Trade Mark;' but the latter words and the outer circle inclosing them may be omitted or changed at pleasure, and the monogram may be omitted or otherwise displayed without affecting the character of our trademark."

This mark was refused registration because the Commissioner of Patents held that it simulates the arms and seal of the State of Maryland, and violates the express prohibition in section 5 of the act before mentioned, and also the provisions of the International Convention for the Protection of Industrial Property of March 20, 1883, article 6, and is contrary to public policy as frequently declared in a series of decisions of the Commissioner of Patents refusing registration of trademarks to public insignia.

This application admits that the mark is "a pictorial representation of the arms and seal of the State of Maryland with certain additions or variations." The Commissioner of Patents decided that the mark was, for this reason, properly refused registration by the Examiner of Trademarks because such marks belong to one of the classes forbidden by section 5, of the act of February 20, 1905 [33 Stat. at L. 726, chap. 592, U. S. Comp. Stat. Supp. 1905, p. 670], which is as follows:

Sec. 5. "That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trademark on account of the nature of such mark, unless such mark—

"(a) Consists of or comprises immoral or scandalous matter;

"(*b*) Consists of or comprises the flag, or coat of arms, or other insignia of the United States, or any simulation thereof, or of any State or municipality, or of any foreign nation: *Provided,* That trademarks which are identical with a registered or known trademark owned and in use by another, and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trademark owned and in use by another, and appropriated to merchandise of the same descriptive properties, as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers, shall not be registered: *Provided,* That no mark, which consists merely in the name of an individual, firm, corporation, or association, not written, printed, impressed, or woven in some particular or distinctive manner or in association with a portrait of the individual, or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered under the terms of this act: *Provided further,* That no portrait of a living individual may be registered as a trademark, except by the consent of such individual, evidenced by an instrument in writing: *And provided further,* That nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several States, or with Indian tribes, which was in actual and exclusive use as a trademark of the applicant or his precedessors from whom he derived title for ten years next preceding the passage of this act."

This section says that no mark shall be refused registration as a trademark upon account of the nature of the mark, unless it—

"(*a*) Consists of or comprises immoral or scandalous matter;

"(*b*) Consists of or comprises the flag or coat of arms, or other insignia of the United States, or any simulation thereof, or of any State."

The section declares that no mark shall be refused regis-

tration as a trademark on account of its nature, unless by its nature it is immoral or scandalous, or is the coat of arms of the United States or of a State, or some simulation thereof.

While this act provided generally for the registration of trademarks, the 5th section expressly prohibited the registration as trademarks of immoral or scandalous matter and public insignia. The last proviso of this section which was in the bill when it passed the House of Representatives, was amended in the Senate by twice substituting the word "mark" for the word "trademark" and in inserting in lieu of "and lawful" the word "exclusive." It is clear to us that these changes were made for the purpose of permitting the registration of marks which were not trademarks, but which had been actually used as trademarks by the applicants or their predecessors, from whom they derived title, and in which the user had acquired property rights for more than ten years next preceding the passage of the act.

The last proviso of section 5, as amended and passed, was not intended to provide for the registration of technical trademarks, for such marks had been cared for elsewhere in this act. This proviso permitted the registration of marks, not in either of the classes prohibited by this section, if such marks were in actual and exclusive use as a trademark for ten years next preceding the passage of the act. In respect of technical trademarks, this proviso was absolutely useless. It was intended to save the right of registration to the marks described in the proviso.

The section had prohibited the registration of immoral or scandalous matter and public insignia as trademarks, no matter how long the same had been before registered, and the proviso only extended the right of registration to marks not within either of the prohibited classes, if such marks had been in actual and exclusive use as a trademark during the ten years next preceding the passage of the act.

The ten-year proviso in no wise relates to the applicants' trademark for whisky, for the proviso relates only to marks which are not technical trademarks. Among such marks, the two classes prohibited by the section were not saved by the pro-

viso, and only such marks not prohibited by the section as were in actual and exclusive use for ten years as a trademark were to be admitted to registration.

The act permitted the registration of all trademarks not within the prohibited classes. It is plain this proviso in extending to marks not technical trademarks the right to registration, intended to confine the marks permitted registration to such as would be legitimate trademarks under this section. The 5th section, taken in its entirety, which prohibited the registration of technical trademarks when such were scandalous, or immoral, or simulations of public insignia, did not at the same time permit marks in actual and exclusive use for ten years to be registered as trademarks if such marks were either scandalous, or immoral, or simulations of public insignia. To permit, under this proviso to the section, the registration of a scandalous mark, and to prohibit, under the section, the registration of a technical trademark which was scandalous, would be absurd. The proviso which was meant to be a saving-clause for certain marks cannot be construed to make the marks thus saved a preferential class of marks to which the two prohibitions of the section do not apply.

The applicants' mark would not be a mark within the meaning of this last proviso to section 5, because it was not in actual and *exclusive* use as a trademark for ten years next preceding the passage of this act.

The application in this case admits that the mark we are now considering is a simulation of the arms or seal of the State of Maryland, with variations it is true, but still a simulation of the coat of arms of Maryland. The coat of arms of Maryland was never in the exclusive use of the applicants during any period, nor could the applicants ever acquire an exclusive use as a trademark of the State coat of arms. In the sense of this proviso, the applicants had the actual, but never had the *exclusive,* use of this simulation of the Maryland coat of arms, and for this reason the appellants' trademark sought to be registered does not come within the last proviso of the 5th section. The appellants never could acquire such property right in the

coat of arms of Maryland, or any simulation thereof, against the State of Maryland.

"In the leading case of *Gilman* v. *Hunnewill,* 122 Mass. 147, Chief Justice Gray said: 'A trademark may consist of a name, or a device, or a peculiar arrangement of words, lines, or figures in the form of a label, which has been adopted and used by a person in his business to designate goods of a particular kind manufactured by him, and which no other person has an equal right to use.' This may be protected by injunction. Can it for a moment be said that the commonwealth cannot use its own device, or that the defendant can obtain an injunction against the commonwealth for so doing? As against the commonwealth, the defendant cannot have any claim to a trademark. Could anyone suppose that this court would allow its seal to be used as a trademark? And if a court's seal cannot be used, cannot the great and general court forbid the use of the great seal and the arms of the Commonwealth 'for any advertising or commercial purpose?' It seems to us too clear for argument." *Com.* v. *R. I. Sherman Mfg. Co.* 189 Mass. 76, 75 N. E. 71.

The Commissioners of Patents in recent years have steadily held that the registration of the coat of arms of the United States or of any State should be refused as being against public policy. *Ex parte Schmachtenburg Bros.* 51 MS. Dec. 204; *New Prague Flouring Mill Co.* 62 MS. Dec. 437.

Commissioner Duell, now associate justice of this court, refused to register similar marks in *Ex parte Penny,* 67 MS. Dec. 38; *The Celluloid Company,* 67 MS. Dec. 136; *Ex parte Standard Fashion Co.* 89 Off. Gaz. 189; *Ex parte Ball,* 98 Off. Gaz. 2366.

In *Ex parte Brandsville Fruit Farm Co.* 103 Off. Gaz. 660, registration was refused of the United States seal for the reason "that the use of such emblems is against public policy, and is not to be encouraged." In refusing registration to the appellants' mark, Commissioner Allen says: "The public policy referred to has been recognized by the legislatures of various States, and by reason thereof statutes have been passed prohibiting the use of the flag for purposes of trade. This policy and the

reasons underlying it were recognized by the International Convention for the Protection of Industrial Property concluded at Paris, March 20, 1883, since in article 6 it was said: 'The deposit may be refused, if the object, for which it is asked, is considered contrary to morals and to public order,' and in the final protocol, it was said: 'In order to avoid all misinterpretation, it is understood that the use of public armorial bearings and decorations may be considered contrary to public order in the sense of final paragraph of article 6.' It was in recognition of this public policy, and not as establishing it, that Congress inserted the provision in section 5 of the act of February 20, 1905, prohibiting the registration of any mark which 'consists of, or comprises, the flag, or coat of arms, or other insignia of the United States, or any simulation thereof, or of any State or municipality, or of any foreign nation.' "

In *License Tax Cases,* 5 Wall. 462, 469, 18 L. ed. 497, 500, Chief Justice Chase, speaking for the court, said: "This court can know nothing of public policy except from the Constitution and the laws and the course of administration and decision. * * * Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here."

For the reasons well stated by Commissioner Allen, Congress has determined, by the very section of the act we are now considering, to enforce a wise public policy by prohibiting the registration of the coat of arms of a State as a trademark.

The United States has united in an international convention with nearly all other nations in refusing to include public arms as trademarks. Had the act we are now considering been silent on this subject, the international convention to which the United States had long been a party would have suggested the acquiescence of Congress in the refusal to register coats of arms of a State; but since, in this general statute for registration of trademarks, Congress has expressly declared that registration shall be refused to trademarks consisting of scandalous or immoral matter, or coats of arms of a State, or any simulation thereof, it is impossible to hold that the last proviso to section 5 in this act

was intended to except one class of marks only from the un-equivocal declaration of Congress against the registration of such trademarks.

The decision of the Commissioner of Patents in this case must be affirmed.

It is not necessary to discuss the appellants' citation of rules for the construction of provisos in statutes. It is impossible to read the act of February 20, 1905, and escape conviction that Congress intended to prohibit the registration of the trademark which the appellants ask.

"The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent. 'The intention of the legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of a statute when it leads away from the true intent and purpose of the legislature and to conclusions inconsistent with the general purpose of the act.' " Lewis's Sunderland, Stat. Constr. sec. 633.

In our opinion the intent of this statute upon this point is so clearly expressed that it needs no argument.

The act of February 20, 1905, was intended to provide for the registration of marks already owned by traders. The last proviso to section 5 was intended to refer only to marks owned by the applicants and in their actual and exclusive use for ten years. A party having a technical trademark must apply for registration under the provisions of this act relating to technical trademarks. This last proviso is a ten-year saving clause for another class of marks.

It is plain from this act that Congress did not intend that any of its provisions should warrant the registration of any trademark which is contrary to the terms of the Convention for the Protection of Industrial Property to which the United States is a party.

The case of *Ruhstrat* v. *People,* 185 Ill. 133, 49 L. R. A. 181, 76 Am. St. Rep. 30, 57 N. E. 41, is not satisfactory reasoning. It appears that a strong minority of that court were also dis-

satisfied with the argument of the majority in favor of making merchandise of the flag.

The circumstance in this case and in several others urged upon us by the appellants, that Congress had been silent upon this subject, has lost force, since Congress in this act has expressly prohibited the registration as trademarks of the coats of arms of the Nation and of the States.    Other cases cited by the appellants need not be reviewed here, since we hold that the act of Congress itself effectually forbids the registration of the simulation of the coat of arms of Maryland.

The clerk of the court will certify this opinion and the proceedings of the court in this cause to the Commissioner of Patents according to law.                    *Affirmed.*