(No. 43379.─

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EDWARD LINDSAY *et al.*, Appellants.

*Opinion filed March 30, 1972.*

RYAN and KLUCZYNSKI, JJ., concurring.

SAMUELS, MILLER, SCHROEDER, JACKSON & SLY, of Decatur (CARL R. MILLER, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and BASIL G. GREANIAS, State's Attorney, of Decatur (FRED G. LEACH, Assistant Attorney General, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendants, Edward Lindsay and Marvin Klaven, were convicted in the circuit court of Macon County of the violation of section 1 of the Illinois Flag Act (Ill.Rev.Stat. 1969, ch. 56¼, par. 6). Lindsay waived trial by jury and was found guilty by the court and Klaven was found guilty by the jury. Each defendant was fined $75.

The evidence established that the defendant Klaven was chairman of the Art Department at Millikin University in Decatur and also served as Director of the Decatur Art Institute, and that the defendant Lindsay was president of the Institute. Klaven, as Director, compiled information about traveling art exhibits and presented such facts to the Art Center Board in connection with its selection of exhibits for display.

An art show entitled "Patriotic Images in American Art" was selected for display at the Art Institute in March of 1969. It was compiled and distributed by the American Federation of Art and its various exhibits were generally described in a catalog, although there was no description of the exhibit which is here in controversy. The show consisted of 29 or 30 separate art objects. Among them was a sculpture entitled "Flag in Chains," which consisted of two American flags sewn together and stuffed with foam rubber. A chain was placed around the middle of the sculpture and was locked into place.

Between 20 to 40 people attended the opening of the show on Sunday, March 2, 1969. There were no disturbances of any kind although complaints were made of another exhibit which contained the caption, "To Hell with Patriotism." Because of the comments, Klaven prepared a statement explaining the exhibits, which was made available to all who visited the Art Institute, including the school children. The "Flag in Chains" exhibit, according to Klaven's explanation, demonstrated the artist's patriotic concern for freedom for all.

On March 3, a picture of and an article on the "Flag in Chains," were published in a local newspaper. The State's Attorney and sheriff then received a number of telephone calls concerning the display.

On March 4, several law-enforcement officials appeared at the Art Institute because of the telephone calls. Subsequently, the State's Attorney notified Klaven's attorney that the exhibit "Flag in Chains" should be removed from the show. In response, the Art Center Board met, but failed to act. Klaven then had the exhibit removed from the main gallery to a separate room where it could be seen on request only, and where it was concealed from public view. Only a few people asked to see it. At no time was there any disturbance, disorder, unusual conduct or vocal threats of any kind.

The exhibit "Flag in Chains" was seized by a deputy sheriff on March 6, and was held until released for display in North Carolina, as a part of the total exhibition.

Subsequently, an information was filed charging the defendants, Klaven and Lindsay, with violating section 1 of "An Act to prevent and punish the desecration, mutilation or improper use of the flag of the United States of America " (Ill.Rev.Stat. 1969, ch. 56¼, par. 6), in that "on March 4, 1969, for exhibition or display they knowingly exposed or caused to be exposed to public view a flag of the United States upon which was attached, appended, and affixed a figure, to wit: a chain; and further that said public exposure was such as was likely to provoke a breach of the peace." Section 1 of the Act provides:

"Any person who (a) for exhibition or display, places or causes to be placed any word, figure, mark, picture, design, drawing, or any advertisement of any nature, upon any flag, standard, color or ensign of the United States or State flag of this State or ensign, (b) exposes or causes to be exposed to public view any such flag, standard, color or ensign, upon which has been printed, painted or otherwise placed, or to which has been attached, appended, affixed, or annexed, any word, figure, mark, picture, design or drawing or any advertisement of any nature, or (c) exposes to public

view, manufactures, sells, exposes for sale, gives away, or has in possession for sale or to give away or for use for any purpose, any article or substance, being an article of merchandise, or a receptacle of merchandise or article or thing for carrying or transporting merchandise upon which has been printed, painted, attached, or otherwise placed a representation of any such flag, standard, color, or ensign, to advertise, call attention to, decorate, mark or distinguish the article or substance on which so placed, shall be punished by a fine of not less than $10 nor more than $100 and costs, or by imprisonment for not more than 30 days in a penal institution other than the penitentiary, or both.

"Any person who publicly mutilates, defaces, defiles or defies, tramples or casts contempt upon, whether by words or act, any such flag, standard, color or ensign, shall be punished by a fine of not less than $1,000 nor more than $5,000 or by imprisonment in the penitentiary from one to 5 years or both."

At the trial, four witnesses, including the sheriff of Macon County, testified on cross-examination that there was no disorder, or threat of disorder, at the Art Institute on March 4—three days after the exhibit opened. Several other witnesses for the State, who were members of various local veterans organizations, testified that the exhibit was likely to provoke a breach of peace. These witnesses were permitted by the court to testify to their subjective mental reaction to the exhibit, "Flag in Chains." They stated that they were "shocked and disturbed," although none of them personally had viewed it at the Art Institute. A few of the organizations adopted resolutions and statements condemning the exhibit. The American Legion and VFW Posts authorized their commanders to sign warrants. The testimony of only one witness remotely touched on the possibility of a breach of peace, and that witness testified that he had persuaded those members of the veterans' organizations who objected to the display to rely upon the law rather than to take physical action to remove the display from the Art Institute.

The defendants have raised several issues in this appeal. They assert that the Flag Act is unconstitutional

under the first amendment to the Federal constitution because it is over-broad; that it is unconstitutional when applied to the facts in this case; that the State did not prove beyond a reasonable doubt that there was a likelihood of a breach of the peace; that the court erred in advising the jury that there was a violation of a Federal law with which the defendants were not charged; and that the court erred in ruling as admissible allegedly hearsay opinion and subjective evidence of mental state, and in instructing the jury.

It is appropriate to review briefly the history of the Illinois Flag Act. It was originally enacted in 1899 and was held to be unconstitutional in *Ruhstrat v. People (1900), 185 Ill. 133.* The rationale of the decision was that the legislature had no power under the guise of police regulations to arbitrarily invade the personal rights or liberties of its citizens; that the term "liberty" as used in the Bill of Rights, included the right to choose a particular business and to advertise its products in any legitimate manner.

"An Act to prevent and punish desecration, mutilation or improper use of the flag of the United States of America" was re-enacted in 1907 as a result of a nationwide movement to adopt such legislation. By that time more than half of the States had enacted similar statutes. Two immediate causes spurred the adoption of the Flag Acts: the presidential campaign of 1896, and the commercial use of the flag. In the campaign of 1896 the flag was used as an emblem by both political parties, and that use resulted in many incidents of abuse, mutilation, and breaches of the peace. Commercial use of the flag was primarily for advertising purposes, and public resentment against this was widespread. (See: Prosser, Desecration of the American Flag, 3 Ind. Legal Forum 159, 194-197 (1969).) Today, every State has legislation protecting the American Flag from desecration.

The Illinois act, as re-enacted in 1907, prohibited the

placing of any advertising design, word or mark on the flag, the exposure to public view of a flag so marked, and the manufacturing or giving away of merchandise upon which a representation of the flag was printed, painted or attached, as well as the mutilation, defilement, or casting contempt by word or act, upon the flag. It made the violation of the Act a misdemeanor and the penalty for such transgression was a fine of not less than $10 nor more than $100 or imprisonment of not more than 30 days, or both.

A flag act identical to that of Illinois was found constitutional in *Halter v. Nebraska (1907), 205 U.S. 34, 51 L.Ed.696.* It was not until 1968 that anything further was added to the Illinois Flag Act. In that year, in response to the acts of flag mutilation, burning and desecration being perpetrated by civil rights advocates and youthful protesters of the Vietnam war, the legislature amended the Flag Act. The provisions applying to the exhibition, display, the placing of any word, figure, mark, design, *etc.,* or any advertisement of any nature upon the flag, or the attaching or appending of any word, figure, mark or picture, *etc.,* were separated from the provisions pertaining to the desecration of the flag. They were set forth in the first paragraph of section 1 of the Act and were punishable by a fine of not less than $10 nor more than $100 and costs, or by imprisonment for not more than 30 days in a penal institution other than the penitentiary, or both. Ill.Rev.Stat. 1969, ch. 56¼, par. 6.

The acts of desecration, mutilation, burning, defilement, and otherwise casting contempt upon the flag, were set forth in the second paragraph of section 1 of the Act and were punishable by a fine of not less than $1,000 nor more than $5,000 or by imprisonment in the penitentiary from one to five years, or both. Ill.Rev.Stat. 1969, ch. 56¼, par. 6.

The only Illinois decision construing the 1907 enactment of the Flag Act (which aside from its provisions

relative to penalties is essentially the same as the 1968 amendment) is *People v. Von Rosen (1958), 13 Ill.2d 68.* The defendndants in *Von Rosen* were the publisher, art director, and the editor of a magazine entitled "Modern Man," in which was published an illustration of a woman who was nude except for a hat, sunglasses, and a piece of cloth, which appeared to be the flag of the United States, covering her pubic area.

In *Von Rosen* this court reversed the conviction of the defendants because the evidence was insufficient to show the likelihood of a breach of the peace. At pages 70 and 71, we observed:

" *** the history of the flag acts of the various States reveals that they were enacted for the purpose of preventing breaches of the peace resulting from improper use of and disrespect to the flag. ***

"The Illinois act was thus enacted for the prevention of breaches of the peace within its borders, and touches a field in which the State's interest (preservation of public order) is dominant although remotely affecting the Federal interest.

\* \* \*

"In applying the facts of this case, we find the record devoid of any evidence showing or tending to show that the publication of the picture by the defendants was done under such circumstances and was of such a nature likely to bring about the substantive evils the legislature sought to prevent. Since the evidence is insufficient to show the likelihood of a breach of the peace, section 1 of the Illinois act cannot be constitutionally applied to these defendants."

In the case at bar, the defendants were charged with having violated the first paragraph of section 1 of the Flag Act in that they "affixed a figure, to wit: a chain," to the flag. They were not charged with the offense of having

mutilated, or defaced, or cast contempt upon the flag. The court found Lindsay, and the jury found Klaven, guilty as charged.

We believe that the *Von Rosen* decision clearly controls this case, and that these convictions cannot stand. Proof of the likelihood of a breach of the peace occurring at the Decatur Art Institute because of this exhibit was lacking here, as it was in *Von Rosen*. The only proof adduced by the State tending to show the likelihood that public disorder of some kind might occur at the Art Institute was the testimony of the witness who allegedly had "persuaded" certain unidentified and unknown persons not to take direct action to remove the exhibit. Such testimony falls far short of proof of the likelihood of a breach of the peace, which circumstance is the basis of the State's interest in the improper use, mutilation or desecration of the flag. *Halter v. Nebraska (1907), 205 U.S. 34, 45; Sutherland v. DeWulf (S.D.Ill. 1971), 323 F.Supp. 740, 744-745.*

In this context, the words of the United States Supreme Court in *Cantwell v. Connecticut (1940), 310 U.S. 296, 308, 84 L.Ed. 1213, 1220, 60 S.Ct. 900,* are relevant: "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious. Equally obvious is it that a state may not unduly suppress free communication of views, religious or other, under the guise of conserving desirable conditions."

The evidence against the defendants did not indicate any immediate threat to public order or safety because of the art exhibit "Flag in Chains." The law enforcement officials of Macon County were not concerned over the possibility of a breach of the peace because of this exhibit. The sheriff and State's Attorney received complaints on March 3; investigated such complaints and viewed the exhibit on March 4; yet, no action was taken to remove

the exhibit and no charge was filed against the defendants until March 6. Since the evidence herein was insufficient to show the likelihood of a breach of peace, the first paragraph of section 1 of the Flag Act cannot be applied to the defendants.

In view of our decision, we do not reach the other issues raised by the defendants, including the question of the constitutionality of the Act itself.

It appears quite certain that a new trial will produce no additional proof that the exhibit "Flag in Chains" would have caused public disorder. Therefore, we reverse the judgments of conviction of the defendants without remanding.

*Judgments reversed.*

MR. JUSTICE RYAN, concurring:

Although I concur in the result reached by the court for reasons to be stated later, I do not agree with the reasoning of the court in reaching its conclusion and I do not approve of the perpetuation by this opinion of the misconception as to the authority of a State to legislate with regard to the United States Flag.

The interest of a State in enacting legislation concerning the flag of the United States is not solely for the purpose of preventing breaches of the peace. The opinion of the court comes to this erroneous conclusion by following the decision of this court in *People v. Von Rosen, 13 Ill.2d 68,* which in turn arrived at this mistaken conception by concluding that Congress had enacted legislation concerning the flag. Therefore, being a field in which the interest of the Federal government is dominant, *Von Rosen* concluded that a State could only enact flag legislation in the exercise of its police powers for the purpose of preventing breaches of the peace. The legislation of Congress which *Von Rosen* held precluded a State from acting in this area is found in Title 36 U.S.C.A. sections 173 through 178. However, these sections do

nothing more than codify and standardize customs and usages of long standing with regard to the use and display of the flag and the method of showing respect therefor. These sections do not proscribe any conduct relating to the flag nor provide a penalty for not conforming to the customs set forth therein.

*Ruhstrat v. People (1900), 185 Ill. 133,* also erroneously held that the State had no authority to legislate with regard to the use or display of a flag, holding that only Congress had such authority. However, in 1907 the Supreme Court in *Halter v. Nebraska, 205 U.S. 34, 51 L.Ed. 696,* held that a State could legislate concerning the use of the United States flag. The court recognized that State governments as well as the Federal government had the constitutional power to enact appropriate flag legislation, and, in the absence of Federal legislation exercising exclusive control, a State in the interest of its own people could appropriately legislate. This right of the State is not based on the necessity of such legislation to prevent breaches of the peace but on the interest of a State in fostering respect for the flag and thus the Union.

Contrary to the conclusion reached in *Von Rosen,* Congress has not legislated in this field to the exclusion of the States. Thus, the right of a State to enact flag legislation, not solely for the purpose of preventing breaches of the peace, but also, as held in *Halter,* for the purpose of fostering respect for the flag and the Union, still remains. As pointed out by Mr. Chief Justice Warren in his dissenting opinion in *Street v. New York, 394 U.S. 576, at 598, 22 L.Ed.2d 572, at 588. 89 S.Ct. 1354,* in commenting on the applicability of a New York statute concerning the United States flag stated: "At the time of appellant's trial the federal prohibition of flag desecration, which in all material particulars was identical to New York's applied only to the District of Columbia and could therefore not have pre-empted state legislation on the same subject." The Federal act referred to is contained in Title 4

U.S.C., section 3. In 1968 Congress enacted further legislation concerning flag desecration applying generally throughout the nation. This act is found in Title 18 U.S.C., section 700. As stated in a footnote on the page above referred to in Mr. Chief Justice Warren's dissent, this legislation specifically does not preempt State flag statutes. See also: Annot., 22 L.Ed.2d 972 (1962).

Hence the status of a State's authority has not been changed since *Halter,* and a State flag statute is authorized not only as an exercise of its police power to prevent a breach of the peace but also for the purpose of fostering respect for the flag and the Union. The validity of the application of such a statute must be tested as is a Federal statute on the same subject, that is, against the constitutionally protected rights of the persons affected thereby. If the application of the State statute does not violate an individual's constitutionally protected right it is not necessary to test the validity of the act by considering its necessity to prevent breaches of the peace.

Regardless of the above, as I indicated at the outset, I must concur in the result reached by the opinion of the court. The charge against the defendants was not made under the section of the act which relates to casting contempt upon the flag but was made under the section of the statute which proscribes exposing or causing to be exposed any flag to which has been "attached, appended, affixed or annexed, any *word, figure, mark, picture, design or drawing* or any advertisement of any nature." (Emphasis supplied.) It is the State's contention that the chain on the art exhibit constituted a "figure" and thus violated this provision of the act. Clearly a chain does not fall within the meaning of the word "figure" as that word is used in the context of this prohibition. Word, figure, mark, picture, design or drawing all relate to similar representations and not to objects. If we accept the State's position that an object (a chain) comes within the ambit of these terms we must also bring within the meaning of these terms all

410

objects. Thus, an exhibit showing the Holy Bible attached to the flag in some manner signifying the motto "For God and Country" would constitute a violation of the statute. The same would be true if the object "attached, appended, affixed or annexed" were an olive branch or the scales of justice. The proscriptions of the statute are broad with the many enumerations contained therein. Therefore each word used in these enumerations must be strictly construed so that the prohibitions of the statute may be precisely understood.

For these reasons I do not believe that the defendants had been proved guilty of a violation of the statute involved.

MR. JUSTICE KLUCZYNSKI joins in this concurring opinion.